**HILDICK APPLE JUICE CO., Inc., v. WILLIAMS, Commissioner of Internal Revenue, et al.**

**DUFFY–MOTT CO., Inc., v. SAME.**

(District Court, S. D. New York. August 17, 1920.)

No. 603.

Intoxicating liquors ☞134—"Preserved sweet cider" not within National Prohibition Act.

The unadulterated juice of apples, preserved by the addition of one-tenth of 1 per cent. of benzoate of soda, known and dealt in generally as "preserved sweet cider," and made by the only known practicable process, and which is not and cannot become intoxicating while it remains fit for beverage purposes, *held* within National Prohibition Act Oct. 28, 1919, tit. 2, § 4, providing that "the articles enumerated in this section shall not, after having been manufactured and prepared for the market, be subject to the provisions of this act if they correspond with the following descriptions and limitations, namely: * * * (f) Vinegar and preserved sweet cider," and its manufacture and sale *held* not a violation of the act.

In Equity. Suit by the Hildick Apple Juice Company, Incorporated, and by the Duffy-Mott Company, Incorporated, against William M. Williams, Commissioner of Internal Revenue, and others. On motions to dismiss bills. Denied.

Both of the foregoing causes come before me on motions by the defendants to dismiss the bills of complaint.

Section 1 of title 2 (41 Stat. 305) of the so-called Volstead Act provides that:

"When used in title II and title III of this act (1) the word 'liquor' or the phrase 'intoxicating liquor' shall be construed to include alcohol, brandy, whisky, rum, gin, beer, ale, porter, and wine, and in addition thereto any spirituous, vinous, malt, or fermented liquor, liquids, and compounds, whether medicated, proprietary, patented, or not, and by whatever name called, containing one-half of 1 per centum or more of alcohol by volume which are fit for use for beverage purposes. * * *"

Section 3 of title 2 provides that:

"No person shall on or after the date when the eighteenth amendment of the Constitution of the United States goes into effect manufacture, sell, barter, transport, import, export, deliver, furnish or possess any intoxicating liquor except as authorized in this act and all the provisions of this act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented."

Section 4 of title 2 provides that:

"The articles enumerated in this section shall not, after having been manufactured and prepared for the market, be subject to the provisions of this act if they correspond with the following descriptions and limitations, namely:

"(a) Denatured alcohol or denatured rum produced and used as provided by laws and regulations now or hereafter in force.

"(b) Medicinal preparations manufactured in accordance with formulas prescribed by the United States Pharmacopœia, National Formulary or the American Institute of Homeopathy that are unfit for use for beverage purposes.

"(c) Patented, patent, and proprietary medicines that are unfit for use for beverage purposes.

"(d) Toilet, medicinal, and antiseptic preparations and solutions that are unfit for use for beverage purposes.

"(e) Flavoring extracts and sirups that are unfit for use as a beverage, or for intoxicating beverage purposes.

"(f) Vinegar and preserved sweet cider.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"A person who manufactures any of the articles mentioned in this section may purchase and possess liquor for that purpose, but he shall secure permits to manufacture such articles and to purchase such liquor, give the bonds, keep the records, and make the reports specified in this act and as directed by the commissioner. No such manufacturer shall sell, use, or dispose of any liquor otherwise than as an ingredient of the articles authorized to be manufactured therefrom. No more alcohol shall be used in the manufacture of any extract, sirup, or the articles named in paragraphs (b), (c), and (d) of this section which may be used for beverage purposes than the quantity necessary for extraction or solution of the elements contained therein and for the preservation of the article. * * *"

The complainants seek to review the decision of the Commissioner of Internal Revenue on the ground that the latter has wrongfully refused to grant them permits for the manufacture of "preserved sweet cider," as required by section 4 of title 2, supra. Section 6 of that title provides that:

" * * * In the event of the refusal by the Commissioner of any application for a permit, the applicant may have a review of his decision before a court of equity in the manner provided in section 5 hereof."

Accordingly complainants have filed their bills in this court, substantially identical in form, with the exception that the Hildick bill alleges that their application for a permit stated that the article proposed to be manufactured "will contain when manufactured and prepared for the market *more or less* than one-half of 1 per centum of alcohol by volume, depending upon the alcoholic content in the pure juice of the apple, * * * but not due in any manner to the addition to the juice of any substance whatsoever," while the Duffy-Mott bill alleges that its application for a permit stated that the article proposed to be manufactured "will contain when manufactured and prepared for the market *less* than one-half of 1 per centum of alcohol by volume."

Each bill alleges that the complainant has for many years, and long prior to the passage of the National Prohibition Act, manufactured preserved sweet cider in the usual course of its business in the following manner: "Fresh apples are delivered to the plants of the complainant by the growers or dealers therein, from which the juice is extracted by passing the apples through grinders and pressers, expressing the juice into receiving tanks. As the juice is being extracted, benzoate of soda in an amount not exceeding one-tenth of 1 per cent. is added thereto, and no other ingredient whatever is added to said juice, nor is any ingredient taken therefrom. The product thus obtained is placed in kegs, barrels, and casks ready for shipment, and at that time," the Hildick bill reads, "may contain more than one-half of 1 per cent. of alcohol by volume," and the Duffy-Mott bill reads, "contains less than one-half of 1 per cent. of alcohol by volume." "It is then transported to various parts of the country and ultimately reaches the retail distributor who breaks the bung of the container and taps it from time to time for sale to his customers, who are the actual consumers."

The bills go on to state that the foregoing process has been for a great many years, and now is generally, in use by manufacturers of preserved sweet cider throughout the United States, is the best and most approved method known, and that the amount of benzoate used in the process is not only the amount used as a preservative to retard fermentation by substantially all other manufacturers, but is the maximum amount allowed by the Department of Agriculture under the federal Food and Drug Act (Comp. St. §§ 8717–8728), and the maximum that can be used without destroying the product as a beverage.

The bills also allege that the product is, and for many years has been, known as "preserved sweet cider," and that "preserved sweet cider is the unadulterated juice of apples, commercially pressed in large quantities, containing approximately one-tenth of 1 per cent. of benzoate of soda, which is added to the juice during or immediately following the process of pressing."

The bills further allege that preserved sweet cider is sweet, and contains more or less than one-half of 1 per cent. of alcohol by volume when pressed because of fermentation that has already occurred in the apple, and that when the preservative is added it does not ferment further in an appre-

ciable degree while in the cask, but under certain atmospheric conditions it ferments slowly upon the admission of air into the cask, when the retail distributor breaks the bung; that preserved sweet cider becomes valueless as a beverage, or for any purpose, on account of acetous fermentation (as unpreserved sweet cider does not) long before the sugar content has been converted into alcohol; that preserved sweet cider is not intoxicating in fact, and cannot become intoxicating in fact, and fit for use for beverage purposes; that preserved sweet cider, which will contain less than one-half of 1 per cent. of alcohol by volume at all times after it is manufactured and prepared for the market, and at the time it is consumed, is impracticable and beyond the power of present invention.

The bills set forth section 36 of regulation 60 of the Bureau of Internal Revenue, which reads as follows: "Sweet cider containing less than one-half of 1 per cent. of alcohol by volume may be manufactured and sold without the necessity of obtaining permit, provided such product is put up and marketed in sterile closed containers, or is treated by the addition of benzoate of soda, or other substance which will prevent fermentation, in such proportion as to insure the alcoholic content remaining below one-half of 1 per cent. of alcohol by volume. The responsibility for keeping the alcoholic content remaining below such percentage rests upon the manufacturer, and in any case where cider is found upon the market containing alcohol in excess of the allowed percentage the manufacturer will be presumed to have manufactured and sold an intoxicating liquor."

The bills then allege that complainants filed applications for permits to manufacture preserved sweet cider in the manner above described, together with the prescribed bonds, that the applications were rejected and the permits refused. The application of the Duffy-Mott Company contained the statement that "the applicant does not insure that the alcoholic content of the preserved sweet cider above described will remain below one-half of 1 per centum by volume, but due entirely to natural causes such as atmospheric conditions, handling, transportation and the like, said preserved sweet cider will, after having been manufactured and prepared for the market, but before being sold to the consumer or consumed, have an alcoholic content in excess of one-half of 1 per centum by volume." The Hildick application having stated, as I have already said, that the article "will contain when manufactured and prepared for the market more or less than ½ of 1 per centum of alcohol by volume depending upon the alcoholic content in the pure juice of the apple just before it is pressed," contained no reservation refusing to insure that the alcoholic content will remain below one-half of 1 per centum by volume.

Each application stated that the liquor would be made from the sweet juice of the apple preserved by the addition of 1 per centum of benzoate of soda; that it is known and dealt in generally as "preserved sweet cider," and would be placed and sealed in casks, barrels, and kegs. The bills pray that the regulations of the Department requiring the manufacturer to insure the maintenance of an alcoholic content below one-half of 1 per centum by volume be declared illegal and void, that the decision refusing to issue permits be reversed, and that the permits be directed to issue. The defendants move to dismiss the bills of complaint on various grounds, which are in substance because no cause of action is stated.

Gilbert & Gilbert, of New York City (Abraham S. Gilbert, of New York City, W. W. Chamberlain, of Buffalo, N. Y., and Jerome E. Malino, of New York City, of counsel), for complainants.

Francis G. Caffey, U. S. Atty., of New York City (Alfred D. Van Buren, of Kingston, N. Y., of counsel), for defendants.

AUGUSTUS N. HAND, District Judge (after stating the facts as above). Although the reason for the decision of the Commissioner in rejecting the applications and refusing the permits does not appear, it would seem to be due to the fact that neither applicant was willing to

insure the permanent alcoholic content of his product, and the Hildick Company would not state that the juice of the apples, when first pressed, contained less than one-half of 1 per centum of alcohol by volume.

The defendants insist that section 1 of title 2 of the Volstead Act governs the case, and that no product of any kind can be manufactured which contains or may contain more than one-half of 1 per centum of alcohol by volume. In this connection they particularly insist upon the provisions of section 3 of title 2, which forbid the manufacture or sale of any intoxicating liquor after the Eighteenth Amendment to the Constitution became effective, and refer to the fact that "intoxicating liquor," as defined by section 1, includes all liquors "containing one-half of 1 per centum or more of alcohol by volume which are fit for use for beverage purposes." It is important to note, however, that section 3, supra, in spite of the prohibition clause, and the clause providing for a liberal construction of all the provisions of the act, in order to prevent the use of intoxicating liquor as a beverage, contains a careful limitation of its sweeping prohibitions in the words, "except as authorized in this act."

If defendants are sound in their position, what becomes of the broad exception of section 4 of title 2 that:

"The articles enumerated in this section shall not, after having been manufactured and prepared for the market, be subject to the provisions of this act if they correspond with the following descriptions and limitations, namely: * * *

"(f) Vinegar and preserved sweet cider."

Both parties seem to rely on what I think is the inconclusive effect upon the construction of the act of the discussions and proceedings when it was before Congress. Such sources of interpretation ought only to be resorted to where the act itself is not clear, and the words of title 2, section 4, of the statute seem to me to bear but one meaning. If the article manufactured corresponds with the description of "preserved sweet cider," it is ex vi termini not subject to the provisions of the act.

The statute very necessarily requires a permit in order to manufacture a liquor which is subject to fermentation, so that no manufacturer shall put out an article which does not correspond with the description of section 4, supra. It may well be that the Commissioner, in issuing permits to manufacture, has the right in a reasonable way to direct the mode of preserving the apple juice, and as part of the regulation of manufacture intrusted to his care to specify the kind of containers which shall be used to prevent fermentation of the cider, and the way in which they shall be sealed. It may be that preserved cider, made out of apples the juice of which has so fermented in the apples that it contains more than one-half of 1 per centum of alcohol by volume, is not preserved sweet cider within the meaning of the statute, because other apple juice as a practical matter can be obtained. These, however, are in my opinion matters of fact, of which this court cannot take judicial notice.

The bills allege that the complainants' products are made from the unadulterated juice of apples, are preserved in the usual way, are in

fact and within the general acceptation of the term "preserved sweet cider," and are at no time intoxicating. They further allege that it is impossible to manufacture a preserved sweet cider that will at all times contain less than one-half of 1 per centum of alcohol by volume. They thus bring the case fully within the permissive clause of section 4 of title 2 of the Volstead Act, are consequently within the exception contained in section 3 of title 2 of the Volstead Act and do not offend the Eighteenth Amendment of the Constitution.

Defendants argue that, though all the allegations of the complaints be true, though the liquor sought to be manufactured is to be manufactured in the only known way, though it is in fact "preserved sweet cider" of the only known kind, and though it can never be intoxicating in fact, it is yet lawful for them to exclude it. Such a position is in the very face of the provisions of section 4, supra, and leaves nothing for subdivision (f) of that section to operate upon. It is clearly untenable.

The regulation of the Department seems to have been complied with by the applicants in all respects except those in which they say compliance is impossible. The requirement that an applicant can use only juice from apples that contain a liquid having less than one-half of 1 per cent. of alcohol by volume, that he so preserve, encase and seal the juice that it never can have a higher percentage of alcohol, may or may not, after the facts are known, be a valid regulation. What in truth is the natural alcoholic content of the juice of the apple when first extracted, what is the best practical mode of preserving the juice, in order so far as possible to prevent fermentation, may be doubtful questions of fact, the investigation of which will show that the regulation is valid. If the defendants can disprove the facts alleged, they can do so after answer. The complainants, however, say in their bills of complaint that their products are made from unadulterated juice of apples, and that they are preserved in the best way practicable, and that their product is "preserved sweet cider." These allegations, admitted by the motions to dismiss, show an unreasonable and unwarranted refusal by the defendants to grant permits.

The decision of Houston v. St. Louis Packing Co., 249 U. S. 479, 39 Sup. Ct. 332, 63 L. Ed. 717, is not in point, for there the action of the department was held by that court, after a trial, to be justifiable. In the present case, which arises on demurrer, there appears no ground for defendants' position, except their legal theory that section 4 (f), supra, is limited by the preceding section 1. With that theory I wholly differ. If preserved sweet cider was to be subject to the limitations of sections 1 and 3 of title 2, there was no reason for inserting it in section 4, where it is in express terms taken out of the provisions of the Volstead Act. To place it in section 4, and then by the provisions of section 1 prohibit its manufacture in the only practicable way would be an almost incredible species of self-repugnant and nugatory legislation.

The motions to dismiss are denied, and leave is granted to answer within 20 days.