444 F.2d 699
 TERMINAL FREIGHT HANDLING CO., and Terminal Freight Co-Operative Association, Plaintiffs-Appellants,
v.
Joseph H. SOLIEN, Regional Director of the Fourteenth Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Defendant-Appellee.
 No. 71-1042.
 United States Court of Appeals, Eighth Circuit.
 June 18, 1971.
 
 Jerry Kronenberg, Murray F. Bahm, Borovsky, Ehrlich & Kronenberg, Chicago, Ill., Gerald Tockman, St. Louis, Mo., for plaintiffs-appellants.
 Marvin Roth, Atty., N.L.R.B., Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Glen M. Bendixsen, Chief of Special Litigation, Attys., N.L.R.B., for defendant-appellee.
 Before MATTHES, Chief Judge, GIBSON, Circuit Judge and HENLEY, District Judge.*
 GIBSON, Circuit Judge.
 
 
 1
 The plaintiffs-appellants seek a declaration of the duty of a Regional Director under the National Labor Relations Act, as amended, 29 U.S.C. § 151 et seq., to file a petition in the district court for injunctive relief when that Director has found reasonable cause to believe that a secondary boycott charge is true. Section 10(l) of the National Labor Relations Act, 29 U.S.C. § 160(l), provides in effect that an appropriate official, in this case the Regional Director, shall make an investigation of complaints of alleged unlawful secondary boycott activity, and, should he find "reasonable cause to believe that such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any [appropriate] United States district court * * * for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter."[1]
 
 
 2
 The plaintiffs (hereinafter collectively referred to as "Terminal") originally filed a complaint for a mandatory injunction requiring the defendant Joseph H. Solien, Regional Director of the Fourteenth Region of the National Labor Relations Board, to petition for temporary injunctive relief against the Union's[2] allegedly unlawful secondary boycott activity pending final adjudication of Terminal's unfair labor complaint filed with the Board. This complaint was amended to include a prayer for declaratory relief with respect to what discretion, if any, the Regional Director had under the circumstances here posited. The District Court sustained a motion to dismiss on the ground of mootness and also on the ground of failure to join an indispensable party.
 
 
 3
 The rather complex factual situation of this controversy has already been before this court in a different context and is discussed in Solien v. Miscellaneous Drivers and Helpers Union, Local 610, 440 F.2d 124 (8th Cir. 1971) (hereafter referred to as "Solien I"). There are also other aspects of this controversy now pending before us.[3] A brief recital of the factual situation underlying the issues presented in this appeal is in order.
 
 
 4
 On June 12, 1970, Terminal filed an unfair labor practice charge with the Board alleging that Teamsters Local 610 was engaging in a secondary boycott in violation of § 8(b) (4) (B), 29 U.S.C. § 158(b) (4) (B). On June 16 the Board's Regional Director, Joseph H. Solien, determined there was reasonable cause to believe that the charge was true, and that in the absence of a cessation of the unlawful picketing, a complaint should issue. The Regional Director did not at that time issue a Board complaint or petition the district court for a § 10(l) injunction because on June 18 he received written assurance from the Union that it had altered its picketing to conform to the Moore Dry Dock[4] standards for determining the legality of "common situs" picketing and an offer of a proposed informal settlement agreement executed by the Union. At the request of Terminal the Regional Director deferred consideration of the proposed settlement while he further investigated the Union's picketing.
 
 
 5
 On June 19, Terminal filed a complaint for an injunction to compel the Regional Director to petition for an injunction pursuant to § 10(l). Terminal's complaint was amended on June 26 to also seek a declaratory judgment (1) that the Director's refusal to petition for a § 10(l) injunction violated the "shall petition" command of § 10(l), and (2) that § 10230 of the Board's Field Manual, which allegedly authorizes Regional Directors to exercise discretion in petitioning for § 10(l) injunctions, is likewise violative of § 10(l).
 
 
 6
 After further investigation the Regional Director came to the conclusion that the Union's picketing still had a secondary nature. Thus, on June 29 he petitioned the United States District Court for the Eastern District of Missouri for a temporary injunction pursuant to § 10 (l)[5] and on July 2 he issued an unfair labor practice complaint against the Union. The Union's primary dispute, however, had been resolved on June 27 and all picketing ceased on June 29. Terminal thereupon dismissed its complaint only insofar as it sought to compel the Regional Director to petition for injunctive relief.
 
 
 7
 The District Court, Judge John K. Regan, 321 F.Supp. 248, dismissed the complaint on the grounds that the Director's June 29 petition for injunctive relief rendered moot Terminal's claim that the Director's refusal to petition for injunctive relief violated § 10(l), and that a declaration as to the validity of § 10230 of the Board's Field Manual was inappropriate in the absence of its promulgator, the General Counsel, as a party-defendant.
 
 
 8
 On July 24, over the objections of the charging parties, the Regional Director and the Union executed a formal settlement agreement with regard to the underlying unfair labor practice complaint, which settlement agreement provided for the entry of a Board order and a court of appeals' decree enforcing the order.[6] The General Counsel approved this settlement on March 19, 1971, and has submitted it to the Board.
 
 JUSTICIABILITY
 
 9
 There is a threshold question of subject matter jurisdiction. The Regional Director argues that § 3(d) of the Act, 29 U.S.C. § 153(d),[7] makes clear that the General Counsel is the final authority in all matters affecting the Board's prosecutorial machinery, including the Regional Director's determination of whether to institute a § 10(l) proceeding, and that the Director's determination in this regard is subject to review only by the General Counsel and not by the courts. It is correctly pointed out that the federal Declaratory Judgment Act, 28 U.S.C. § 2201, does not confer jurisdiction but rather provides an additional remedy where jurisdiction already exists. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-672, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).
 
 
 10
 In Meekins, Inc. v. Boire, 320 F.2d 445 (5th Cir. 1963), the charging parties sought to enjoin a regional director from refusing to petition the district court for § 10(l) relief. The Fifth Circuit affirmed the district court's dismissal because the charging parties failed to exhaust their administrative remedies in not seeking review under 29 C.F.R. § 102.19.[8] The critical factual difference between Meekins and the instant case is that the regional director in Meekins did not find there was reasonable cause to believe that the secondary boycott charge was true. Since the Director in the instant case found that there was reasonable cause to believe the charge was true, the question squarely presented is whether the Director acted in excess of his statutory authority in refusing to issue a complaint and to petition for injunctive relief.
 
 
 11
 That the district court had jurisdiction under 28 U.S.C. § 1337 in the instant case to determine whether the Director's action exceeded his delegated powers was made clear in Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed. 2d 210 (1958). Leedom held the district court had jurisdiction under § 1337 to determine whether the Board had exceeded its delegated powers and acted contrary to a specific prohibition in the Act, reasoning that "[t]his Court cannot lightly infer that Congress does not intend judicial protection of rights it confers against agency action taken in excess of delegated powers." Id. at 190, 79 S.Ct. at 185. Although a negative prohibition was involved in Leedom, the rationale has been held to be equally applicable when, as here, the Board or its agents act in disregard of an affirmative or mandatory command. In Miami Newspaper Printing Pressmen's Union Local 46 v. McCulloch, 116 U.S.App.D.C. 243, 322 F.2d 993 (1963), the Court held that § 9(c) (1) of the Act requiring the Board to certify results of a representation election imposed a mandatory duty on the Board to certify an election in which the infirmity, if any, was in the Board's own procedure. The Court's answer to the Board's argument that Leedom applied only with reference to a negative prohibition vis-a-vis a mandatory requirement is likewise dispositive of that issue in the instant case:
 
 
 12
 "The language which the Supreme Court held had been violated was in terms of `shall not,' words of prohibition. The provision with which we are here concerned, Section 9(c) (1), is in terms of requirement: `If the Board finds upon the record of such hearing that such a question of representation exists, it shall direct an election by secret ballot and shall certify the results thereof.' (Emphasis added.) We are unable to read the Court's decision in Leedom v. Kyne as limited to the negatively worded prohibition there involved. If, after the Board finds that a question of representation exists, and an election is held, the requirement that it `shall' certify the results is mandatory, then a failure to so certify would be prohibited by the Act and in excess of the Board's powers. A party would be as aggrieved by such a failure as by an act of the Board contrary to an express prohibition." Id. at 997 (footnote omitted.)
 
 
 13
 We conclude that jurisdiction properly rested with the district court under 28 U.S.C. § 1337. In so holding, we stress, as did the Supreme Court in Leedom, that the instant "suit is not one to `review,' in the sense that term is used in the Act, a decision of the Board made within its discretion." 358 U.S. at 188, 79 S.Ct. at 184.
 
 
 14
 We think this case is justiciable because there is a distinct possibility that the challenged activity will recur and that the challenging party will be affected should recurrence take place. Solien I (440 F.2d at 127). See also Local 1976, United Brotherhood of Carpenters and Joiners, etc. v. NLRB, 357 U.S. 93, 97 n. 2 (1958). In addition the controversy between these adverse parties still exists as to the authority or discretion of the Regional Director to refuse to file a petition for injunctive relief upon his finding that there is reasonable cause to believe that the secondary boycott charge is true. The Regional Director's contention that he has absolute discretion to file or not directly impinges upon Terminal's rights to be free of recurring secondary boycotts. The Director's position is diametrically opposed to Terminal's contention that the Director has no discretion whatever after making the necessary predicate findings under § 10(l). Thus, the extent of the charging party's rights under § 10(l) and the Regional Director's obligations thereunder are and will continue to be relevant each time a charge is filed alleging violations remedial under § 10(l).[9] "[F]urthermore, the policy of insuring judicial review of issues of public importance which are inherently evasive of review compels us not to refuse review on the basis of mootness." Solien I (440 F.2d at 128). See United States v. W. T. Grant Co., 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969); Southern Pac. Terminal Co. v. ICC, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911).
 
 
 15
 For these same reasons we reject the Director's contention that this case does not satisfy the "actual controversy" prerequisite to a determination under the Declaratory Judgment Act. There was clearly an actual controversy as of June 19 when the Director refused to petition for the injunction although he had found reasonable cause to believe the charge true three days earlier. His voluntary cessation of this conduct (by petitioning for a temporary injunction) on June 29 should not deprive the court of the power to hear and determine the case. United States v. W. T. Grant Co., 345 U.S. at 632, 73 S.Ct. 894. The controversy still remains to be settled and the resolution of this case in its present posture will further two of the principal purposes for rendering declaratory judgments in that "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue" and "it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." E. Borchard, Declaratory Judgments 299 (2d ed. 1941). See also Gordon v. Bowles, 153 F.2d 614, 616 (Emer.Ct.App.), cert. denied, 328 U.S. 858, 66 S.Ct. 1350, 90 L.Ed. 1629 (1946).
 
 
 16
 Finally, we think the District Court erred in concluding that the General Counsel was an indispensable party to any determination of the validity of Board Field Manual § 10230. The determination of the validity of § 10230 is necessarily tied to our determination of the duty § 10(l) imposes on the Regional Director. Since § 10230 would clearly be invalid if we were to sustain Terminal's interpretation of § 10(l) that the Regional Director has a mandatory duty to petition for injunctive relief once he has determined there is reasonable cause to believe a secondary boycott charge is true, the General Counsel is not an indispensable party. While § 10(l) expressly provides that for purposes of initiating injunctive relief the Regional Director acts "on behalf of the Board," we are cognizant that the General Counsel has final prosecutorial authority and can override the Regional Director. See McLeod v. Local 239, International Brotherhood of Teamsters, etc., 330 F.2d 108 (2d Cir. 1964). Nonetheless, the General Counsel is not an indispensable party since our decree could effectively grant the relief desired by expending itself on the Regional Director who is before the Court. Williams v. Fanning, 332 U.S. 490, 68 S.Ct. 188, 92 L.Ed. 95 (1947).
 
 THE MERITS
 
 17
 The Regional Director's position is that the duty imposed on him by § 10(l) of seeking appropriate injunctive relief becomes operative only after he has made two independent judgments. First, he must decide whether there is reasonable cause to believe the secondary boycott charge is true; if he so concludes, he then must decide whether a complaint should issue. And the determination as to whether a complaint should issue is a matter within his discretion, subject to review only by the General Counsel under § 3(d) of the Act. Moreover, he contends other valid considerations, apart from the merits of the charges, may be significant elements in his decision and equally within the scope of discretion allowed the General Counsel under § 3(d).
 
 
 18
 Terminal claims that a literal reading of the statute indicates that upon the Director's determination that reasonable cause exists, a complaint must issue and the Director must necessarily petition for injunctive relief under the statutory command of § 10(l). In support of its position, Terminal points to the "shall petition" language of § 10(l) and argues that had Congress intended the decision to petition for injunctive relief to be discretionary even though reasonable cause has been found, it would have used language similar to the "shall have power * * * to petition" upon issuance of a complaint language of § 10(j), which affords potential injunctive relief from violations of the Act not included under § 10(l).[10]
 
 
 19
 The legislative history is of some assistance[11] and the comparatively clear distinction in the use of words in § 10(j) and § 10(l), which were drafted, debated and enacted together in the 1947 amendments to the Act, leads us to conclude that Congress did create a deliberate statutory distinction between the nature of the duty it imposed on the Regional Director in § 10(l) and § 10(j).[12] Senate Report No. 105, 80th Cong., 1st Sess. (1947), also indicates that a definite distinction was intended. The Report explains that jurisdictional strikes were omitted from mandatory coverage under § 10(l) and placed under § 10(j), where injunctive relief "is made discretionary because it is anticipated that the separate machinery provided in 10(k) for settling such disputes will generally suffice."[13] Id. at 27.
 
 
 20
 The Senate floor debates, which did not focus on the precise question before us, reveal a deep concern about the serious economic damage occasioned by secondary boycotts.[14] While a consensus agreed that there was a need for expeditious relief in such situations, the Senate was split on the question of whether the charging parties should be allowed to petition a district court directly for injunctive relief or whether the Board alone would have the power to initiate such injunction suits. The Ball Amendment, which would have permitted charging parties to petition the district courts directly for injunctive relief, was soundly defeated and a legislative compromise appears to have been struck.[15] To avoid the problem of employers forum-shopping and achieving an independent development of the law through their selection of theories of violation and relief, the right to initiate injunction suits was limited to the Board. In order to provide a meaningful remedy for employers faced with an injurious secondary boycott, the regional director[16] was required to investigate such charges forthwith, giving them priority over all other cases, and to seek injunctive relief when he finds reasonable cause to believe the charges are true, subject to certain qualifications which we will discuss shortly.[17]
 
 
 21
 Although this is a case of first impression, the Ninth Circuit construed § 10(l) similarly in Retail Clerks Union Locals 137 v. Food Employers Council, Inc., 351 F.2d 525 (9th Cir. 1965), though in a different context. The Court there held that a district court had the power to grant a § 10(l) injunction originally petitioned for by the regional director notwithstanding the fact that the latter had meanwhile entered into a stipulation with the respondent union which he believed obviated the need for injunctive relief. Although acknowledging that "it may be true that the Regional Director could not be compelled to institute proceedings under Section 10(l)", the Court stated that "the Regional Director's duty to seek an injunction when he has reasonable cause to believe that one of the sections of the National Labor Relations Act enumerated in Section 10(l) has been violated is mandatory." 351 F.2d at 530 (footnote omitted).
 
 
 22
 It is our conclusion that Congress intended that the Regional Director must take immediate steps to investigate charges arising under § 10(l), and, upon making a reasonable cause determination, proceed forthwith to resolve the dispute. While we disagree with the Director's view that even after finding reasonable cause, he retains absolute discretion as to whether he should petition for a temporary injunction or issue a complaint, we do not feel the "and that a complaint should issue" language of the statute is superfluous or should be disregarded.
 
 
 23
 Generally those engaged in prosecutorial or enforcement activities are allowed a wide discretion and considerable latitude on when to file charges and against whom charges are to be filed. This is necessarily so for many reasons, some more obvious than others. The resources of those engaged in prosecutorial activities as well as the resources of all agencies of the Government and the country itself are not unlimited. Priorities must be established and the resources available utilized to carry out the primary object of the enforcement activity. Some violations are minimal and in the very nature of things are not worthy of the expense entailed in calling the parties to account. Often disputes are settled by agreement or negotiation and thus do not warrant a greater expenditure of public funds and manpower. Also, many decisions rest on marginal facts, requiring an assessment of the overall situation and background before a commitment of limited manpower can be channelled into enforcement activity. Therefore, it stands to reason that the Regional Director must possess some latitude on when, in his judgment, appropriate injunctive relief should be sought. However, this general prosecutorial discretion is neither absolute nor unfettered, and where an appropriate statute directs mandatory action, the prosecutorial discretion is thus narrowed and limited.
 
 
 24
 We, therefore, conclude the "and that a complaint should issue" phrase reflects Congress' intention that the regional director retain limited prosecutorial discretion once he has made a reasonable cause determination. We think it is clearly within his discretion to make an initial demand upon the union to cease its unlawful activity. However, if he is unable to secure cessation upon such summary demand and negotiation, he must then petition for temporary injunctive relief and issue a complaint (or vice-versa). The law does not and should not require the doing of useless acts. Rather than requiring the regional director to petition for injunctive relief in every case where reasonable cause is found, as Terminal contends, Congress intended that the regional director retain a limited discretion so that he would not be required to perform the meaningless act of petitioning for injunctive relief when the union has already ceased the unlawful activity and it is unlikely that the conduct will resume, nor to proceed in a case where the acts complained of are so insignificant as to be unworthy of the Board's and the Court's attention.
 
 
 25
 The Director of course may still negotiate settlements in lieu of injunctive relief in cases in which he has petitioned for injunctive relief such as was done here, and undoubtedly such settlements will be approved by the district court in most instances. See Solien I. If a settlement in lieu of injunctive relief negotiated by the regional director fails to adequately protect the public interest, the district court can override the settlement and grant injunctive relief. Retail Clerks Union, Local 137 v. Food Employers Council, Inc., supra.
 
 
 26
 Our construction of § 10(l) is in no way inconsistent with our decision in Solien I. While § 10(l) neither permits the charging party to initiate an injunction suit nor grants it party status in the injunction proceeding, it does afford the charging party certain rights and imposes a duty upon the regional director to petition for injunctive relief if he is unable to secure cessation of the unlawful activity upon request or through summary negotiation, unless the matter presented is so unsubstantial as not to warrant further action.
 
 
 27
 Notwithstanding our disagreement with the all-or-nothing argument made by the Board on the statutory construction question, we do not think the assailed § 10230 of the Board's Field Manual is at all violative of the Congressional mandate for affirmative action, but to the contrary is in aid thereof and consonant with our interpretation of § 10(l). In the first place, the Field Manual, as stated in the introductory paragraph § 10000, is not all inclusive or necessarily a compendium of when action shall be taken regarding unfair labor practice complaints.[18] In the second place, § 10230 expressly recognizes the mandatory nature of the Congressional command of § 10(l) and by implication directs that affirmative action be taken unless the proscribed activity has voluntarily ceased and a resumption thereof is not indicated. Section 10230 of the Field Manual reads:
 
 
 28
 "Where there is reasonable cause to believe that a violation [of Sections 8(b)(4), 8(e) or 8(b)(7)] has occurred and that a complaint should issue * * *, Section 10(l) of the Act authorizes injunctive relief.
 
 
 29
 "Under that section injunction proceedings are mandatory; however, if it appears that the union has voluntarily ceased engaging in the conduct and a resumption thereof is not threatened, * * * commencement of 10(l) proceedings may be held in abeyance, as our experience in the courts has demonstrated that they are unwilling to accept filings where the activity has ceased and there is no likelihood of resumption." (Emphasis added.)
 
 
 30
 This is in accord with our view of the regional director's obligation and duties under § 10(l).
 
 
 31
 Inasmuch as the complaint for injunction was dismissed by Terminal and the balance of this suit is concerned with a declaration of rights, this opinion shall serve as a declaration of rights of the parties and no further action is required by the trial court. Judgment of District Court is vacated and cause remanded with direction to file a copy of this opinion as a declaration of the rights of the parties. Two-thirds of costs assessed against the appellee and one-third against appellant.
 
 
 
 Notes:
 
 
 *
 Chief Judge, United States District Court, Eastern District of Arkansas, sitting by designation
 
 
 [1]
 Section 10(l) provides in pertinent part:
 "Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4) (A), (B) or (C) of section 158(b) of this title, or section 158(e) of this title or section 158(b) (7) of this title, the preliminary investigation of such charge shall be made forthwith and given priority over all other cases except cases of like character in the office where it is filed or to which it is referred. If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any United States district court within any district where the unfair labor practice in question has occurred, is alleged to have occurred, or wherein such person resides or transacts business, for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law * * *."
 
 
 [2]
 Miscellaneous Drivers and Helpers Union, Local No. 610, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, hereafter referred to as "Teamsters Local 610" or "Union."
 
 
 [3]
 See footnote 6, infra.
 
 
 [4]
 Sailors' Union of the Pacific (Moore Dry Dock Co.), 92 N.L.R.B. 547, 549 (1950)See also Local 761, Elec. Workers v. NLRB, 366 U.S. 667, 676-677, 81 S.Ct. 1285, 6 L.Ed.2d 592 (1961).
 
 
 [5]
 In the § 10(l) proceeding the district court approved on July 9 a settlement stipulation in lieu of injunctive relief, which had been executed by the Regional Director and the Union over the objection of the charging parties. The charging parties thereupon appealed to this Court from the district court's order denying them full party status in the § 10(l) proceeding. This Court affirmed the district court's order in Solien v. Miscellaneous Drivers & Helpers Union, Local 610, 440 F.2d 124 (8th Cir. 1971).
 
 
 [6]
 On July 17 the charging parties had filed a complaint in the district court alleging that the Director had violated their rights under the Act and the Board's rules and regulations by excluding them from settlement discussions and depriving them of essential facts in connection with settlement deliberations and sought to enjoin the Director from approving any settlement or engaging further in settlement discussions without the informed participation of the charging parties. The action was dismissed by the district court for lack of jurisdiction over the subject matter. Terminal's appeal from the district court's judgment has been briefed and argued and is presently pending decision by this Court. Sears, Roebuck and Co., et al. v. Solien, . . . F.2d . . . (8th Cir. Nos. 20462 and 20472 . . . 1971)
 
 
 [7]
 Section 3(d) provides in pertinent part:
 "The General Counsel of the Board shall exercise general supervision over all attorneys employed by the Board (other than trial examiners and legal assistants to Board members) and over the officers and employees in the regional offices. He shall have final authority, on behalf of the Board, in respect of the investigation of charges and issuance of complaints under section 160 of this title, and in respect of the prosecution of such complaints before the Board, and shall have such other duties as the Board may prescribe or as may be provided by law."
 
 
 [8]
 29 C.F.R. § 102.19 provides a right to appeal to the General Counsel from the Director's refusal to issue a complaint
 
 
 [9]
 Terminal has compiled statistics from data furnished by the Board under the Public Information Act, 5 U.S.C. § 552, which indicate that in perhaps three-fourths of the cases in which reasonable cause is found by a regional director, the regional director does not petition for injunctive relief. During the three-year period from 1968 through 1970, there were 30 cases in which unilateral settlement agreements as to the underlying unfair labor practice charges were effected between the Board and the unions charged with § 8(b) (4) violationsover the objections of the charging parties. Of these 30 cases in which the regional director necessarily found reasonable cause and the charging parties were not satisfied with the settlements negotiated by the regional director, the regional director petitioned for injunctive relief in only 8 cases (i. e. 26.7%).
 The National Labor Relations Board's Thirty-Fourth Annual Report, for the fiscal year 1969, provides further support for Terminal's assertion that regional directors refuse to seek injunctive relief in approximately three-fourths of the cases in which they find reasonable cause. During fiscal 1969, 2656 cases were filed alleging violations contemplated within the relief afforded under § 10(l). Appendix A, Table 2, page 199, 34th Annual Report of the NLRB, CCH Labor L.Rep. No. 130 (Jan. 26, 1971). Of this total, settlement agreements were effected in 784 cases. Id., Appendix A. Table 7, page 208. Of these 784 cases in which reasonable cause necessarily was found, § 10(l) relief was sought in only 190 cases. Id., Appendix A, Table 20, page 238. Consequently, regional directors failed to petition for § 10(l) injunctive relief in 75.8% of these cases.
 While these figures do not include cases in which regional directors may have petitioned for injunctive relief where an adjudication of the unfair labor practice was ultimately made, we note that the Board does not dispute these figures or the conclusion Terminal has drawn from them.
 
 
 [10]
 Section 10(j) provides in pertinent part:
 "The Board shall have power, upon issuance of a complaint as provided in subsection (b) of this section charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order."
 
 
 [11]
 The precise nature of the regional director's duty to petition for § 10(l) relief was not fully clarified in either the Congressional reports or the floor debates on the committee bill, which contained the present § 10(l) provisions in question here. The only floor discussion of the meaning of § 10(l) at all relevant took place in the Senate floor debates on the Ball Amendment which would have permitted private parties to petition for injunctive relief. The Ball Amendment, of course, was subsequently defeated by a vote of 62 to 28. 93 Cong.Rec. 4847 (1947).
 In the Senate floor debates, the proponents of the Ball Amendment, Senators Ball, Wherry, Donnell and Revercomb, took the position that the committee bill made it discretionary with the Board as to whether a temporary injunction would be sought against alleged secondary boycotts, 93 Cong.Rec. 4835-36, 4837, 4838 (1947). The supplemental views of Senators Taft, Ball, Donnell and Jenner to the Senate Majority Report were likewise critical of the proposed § 10(l) because it provided "a weak and uncertain remedy for those injured by clearly illegal strikes" as "[i]t depends upon the decision of the National Labor Relations Board as to whether any action shall be taken * * *," Supplemental Views of Senators Taft, Ball, Donnell and Jenner on S. 1126, Senate Report No. 105, 80th Cong., 1st Sess. (1947), at 54.
 Of those opposing the Ball Amendment in the Senate floor debates Senator Morse and Senator Pepper took the position that the committee bill provided a mandatory injunction procedure, while Senator Smith indicated that a discretionary procedure was intended and desirable, 93 Cong.Rec. 4840, 4846, 4843 (1947). The Senate Majority Report, which merely repeats the pertinent statutory language, is not of itself very illuminating although it does speak of a mandatory duty on the Board to petition for injunctive relief. Senate Report No. 105, 80th Cong., 1st Sess. (1947), at 27. However, one of the main objections to the bill in the Senate Minority Report was "the immediate requirement of a mandatory injunction" in certain types of labor disputes. Senate Minority Report No. 105, pt. 2, 80th Cong., 1st Sess. (1947), at 19.
 We are quite cognizant that the conflicting views set forth in these reports and remarks undoubtedly were due in part to the adversary context in which they were made. The issue of primary concern was whether the charging party could personally petition for a temporary injunction. Except for Senator Smith's remarks, the remarks made in opposition to the Ball Amendment painted the committee bill as providing a mandatory injunction procedure through the Board; whereas the remarks made in support of the Ball Amendment and the supplemental Majority Report contended that the procedure was wholly discretionary with the Board under the committee bill.
 Consequently, while we view the Senate floor debates as not conclusive in construing § 10(l), we do think the statements in both the Senate Majority and Minority Reports that a mandatory injunction procedure was intended are valuable indications of Congressional intent.
 
 
 [12]
 A plausible rationale for this distinction has been suggested by one commentator:
 "Evidently, these particular union unfair labor practices warranted the mandatory operation of section 10(l) because of their immediate injury to the public resulting from the union clash with an employer and his business whereas the remaining union unfair labor practices, which fall within the discretionary scope of section 10(j), directly affect employees and their relations with the union, with possible public injury more remote. Similarly, the absence of employer unfair labor practices from section 10(l) seems to be based on a policy judgment that the proscribed employer practices, unlike the enumerated union activities, do not so injure the public that normal Board remedies are inadequate."
 Note, Temporary Injunctive Relief Under Section 10(l) of the Taft-Hartley Act, 111 U.Pa.L.Rev. 460, 463-464 (1963) (footnotes omitted). See also Comment, 56 Mich.L.Rev. 102, 104-105 (1957).
 
 
 [13]
 This distinction is also reflected in the remarks of Senator Morse of Oregon:
 "Under section 10(j) of the committee bill the National Labor Relations Board may in its discretion apply for a temporary restraining order where unfair labor practices have been committed, including, of course, the unfair labor practices which we are here discussing. Section 10(k) authorizes the Board to appoint arbitrators in jurisdictional disputes whose decision is to be final. Section 10(l) requires that with respect to secondary boycotts and jurisdictional strikes the regional attorney of the National Labor Relations Board shall petition for appropriate injunctive relief pending the final adjudication of the Board with respect to the case." 93 Cong.Rec. 4841 (1947).
 Jurisdictional strikes were subsequently deleted from the mandatory coverage of § 10(l) in its final form.
 
 
 [14]
 See, e. g., 93 Cong.Rec. 4833-4847 (1947).
 
 
 [15]
 Id.
 
 
 [16]
 When we refer to the regional director, we include any other officer or regional attorney who may be included within the language of § 10(l).
 
 
 [17]
 The remarks of Senator Morse on the floor of the Senate during the debate on the Ball Amendment reflect the nature of the compromise. As a substitute for the Ball Amendment, Senator Taft of Ohio had proposed that private parties be given the right independent of Board action to sue for damages resulting from unlawful secondary activity. Senator Morse stated:
 "I do want to make the additional argument against the Taft substitute that it makes it possible for two different district courts and the NLRB to be dealing simultaneously with the same subject matter. The Board would be conducting a hearing looking to a cease-and-desist order. At the same time, the Board would be required, as provided in the committee bill [in which the proposed § 10(l) was in substantially its present form], on which I will comment in a moment, to seek injunctive relief, which means that there would be two actions going on at the same time, or that there might be. While I acquiesced in this latter provision when it was added to the bill, I may say that I did so rather reluctantly. That is an example, however, of my willingness to enter into reasonable compromise in committee. I did so believing that the best procedure would have been to make it discretionary, rather than mandatory, for the Board to seek injunctions." 93 Cong.Rec. 4840 (1947) (emphasis added).
 
 
 [18]
 Section 10000 states:
 "This Manual is intended as a guide to the professional employee in the field with respect to case handling procedures. It is not intended as a compendium of the substantive law nor a substitute for a knowledge of the law.
 "It is expected that the guidelines and instructions will be followed in the processing of Agency work. Recognizing, however, that no guidelines or instructions can fully anticipate the many and varied situations encountered by professional employees in their day-to-day work, the provisions and guidelines herein must be tempered in appropriate circumstances with responsible, professional judgment."