The **NATIONAL MILK PRODUCERS FEDERATION, Land O'Lakes, Inc., Associated Milk Producers, Inc., Consolidated Dairy Products Co., Lyle L. Lapham and Charles R. Schell, Appellants,**

v.

The Honorable Patricia **HARRIS, Secretary Department of Health and Human Services and Dr. Jerre E. Goyan, Commissioner, Food and Drug Administration, Appellees.**

No. 80–1687.

United States Court of Appeals,
Eighth Circuit.

Submitted April 14, 1981.

Decided July 9, 1981.

**340**

Harry G. Shupe, Washington, D. C., for Federation of Homemakers.

Sydney Berde (argued), Sydney Berde, P.A., St. Paul, Minn., for appellants National Milk Producers Federation, Associated Milk Producers, Inc., Consolidated Dairy Products Co., Inc. and Charles R. Schell.

Ralph K. Morris, Doherty, Rumble & Butler, St. Paul, Minn., for appellants Land O'Lakes, Inc. and Lyle L. Lapham.

Charles R. Bills, Cross, Murphy & Smith, Washington, D. C., for appellant National Milk Producers Federation.

Barry Grossman, Frederic Freilicher (argued), Attys., Dept. of Justice, Washington, D. C., Nancy L. Buc, Chief Counsel, David F. Weeda, Associate Chief Counsel for Foods, Food and Drug Administration, Rockville, Md., for appellees.

Dennis Gott, Chicago, Ill., for Swift & Co.

Kathleen A. Buck, Washington, D. C., for Swift & Co., a subsidiary of Esmark, Inc.

Before BRIGHT, HENLEY and ARNOLD, Circuit Judges.

BRIGHT, Circuit Judge.

The National Milk Producers Federation and other representatives of dairy producers (collectively, the Federation)[1] brought this suit seeking both mandatory and declaratory relief against the Secretary of Health and Human Services and the Commissioner of the Food and Drug Administration (collectively, the FDA). In its complaint the Federation alleged the invalidity of a FDA regulation that authorizes qualifying food products to bear a label describing these products as "substitute[s]" rather than as "imitation[s]". In addition, the complaint alleged that the FDA had unlawfully approved the marketing of food products as cheese substitutes and had unlawfully refused to enforce the regulation against such products.

The FDA moved to dismiss the complaint for failure to state a claim upon which relief could be granted and, in the alternative, for summary judgment. After submission of affidavits, the district court[2] granted the FDA's motion for summary judgment and dismissed the action. In its memorandum and order the district court upheld the validity of the challenged regulation and concluded that the FDA's enforcement of the regulation was committed to the agency's discretion. For reasons stated below, we affirm.

1. The National Milk Producers Federation is a 65-member dairy cooperative trade association with its principal place of business in Washington, D. C. Plaintiffs-appellants also include Land O'Lakes, Inc., an agricultural cooperative association with its principal place of business in Minneapolis, Minnesota; Associated Milk Producers, Inc., a dairy farmers' cooperative association with its principal place of business in San Antonio, Texas; Consolidated Dairy Products Co., a Washington corporation operating as a sales agent for a corporate dairy cooperative, United Dairymen's Association; and Lyle Lapham and Charles Schell, Minnesota dairy farmers and members of Land O'Lakes, Inc. and Associated Milk Producers, Inc., respectively.

The Federation of Homemakers, a nonprofit organization representing the interests of its consumer-members, has filed an amicus curiae brief on appeal supporting the Federation's position.

2. The Honorable Edward J. Devitt, United States Senior District Judge for the District of Minnesota.

## I. *Background.*

The Federal Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. §§ 301–392 (1976 & Supp. III 1979), establishes criminal penalties for the adulteration or misbranding of any food. Section 403(c) of the Act, 21 U.S.C. § 343(c) (1976), provides:

A food shall be deemed to be misbranded—

\*    \*    \*    \*    \*    \*

*Imitation of another food*

(c) If it is an imitation of another food, unless its label bears, in type of uniform size and prominence, the word "imitation" and, immediately thereafter, the name of the food imitated.

The Act, however, contains no provision defining the word "imitation."[3]

In 1973 the FDA held a notice-and-comment rulemaking proceeding to define the statutory term "imitation." *See* 38 Fed. Reg. 2138–39 (1973). Eight months after publishing notice of its proposed rulemaking, the FDA promulgated the regulation in issue here and now codified at 21 C.F.R. § 101.3(e) (1980).

The regulation requires any nutritionally inferior food which is a substitute for and resembles another food to bear a label identifying it as an "imitation" in accord with section 403(c) of the Act, 21 U.S.C. § 343(c) (1976). 21 C.F.R. § 101.3(e)(1) (1980).[4] The regulation defines nutritional inferiority as any reduction, in comparison with the content of the resembled food, in the content of essential nutrients which constitute two percent or more of the U.S. Recommended Daily Allowance (U.S. RDA) of protein or listed vitamins and minerals. 21 C.F.R. § 101.3(e)(4) (1980).[5] In addition, to be free from the imitation labeling requirement, the regulation provides that a substitute food at least nutritionally equivalent to the food it resembles must have a label bearing a common or usual name or an appropriately descriptive term. 21 C.F.R. § 101.3(e)(2) (1980).[6]

As already noted, *see* note 3 *supra*, the D.C. Circuit upheld the regulation as consistent with the Act and "well within the zone of reasonableness required of agency rulemaking." *Federation of Homemakers v. Schmidt*, 539 F.2d 740, 743–44 (D.C.Cir. 1976).

In 1978 the FDA initiated a rulemaking proceeding to establish standards of identi-

---

**3.** As the D.C. Circuit noted in its opinion rejecting a challenge to the same regulation in issue here, "until promulgation of the challenged regulation, a definition [of the word "imitation"] had evolved only indirectly from infrequent cases involving [21 U.S.C. § 343(c) (1976)]." *Federation of Homemakers v. Schmidt*, 539 F.2d 740, 741 (D.C.Cir.1976) (footnote omitted).

**4.** 21 C.F.R. § 101.3(e)(1) (1980) provides:

A food shall be deemed to be an imitation and thus subject to the requirements of section 403(c) of the [A]ct [21 U.S.C. § 343(c) (1976)] if it is a substitute for and resembles another food but is nutritionally inferior to that food.

**5.** 21 C.F.R. § 101.3(e)(4) (1980) provides:

Nutritional inferiority includes: (i) Any reduction in the content of an essential nutrient that is present in a measurable amount, but does not include a reduction in the caloric or fat content provided the food is labeled pursuant to the provisions of [21 C.F.R.] § 101.9 [(1980)], and provided the labeling with respect to any reduction in caloric content complies with the provisions applicable to caloric content in Part 105 of this chapter.

(ii) For the purpose of this section, a measurable amount of an essential nutrient in a food shall be considered to be 2 percent or more of the U.S. RDA of protein or any vitamin or mineral listed under § 105.3(b) of this chapter per average or usual serving, or where the food is customarily not consumed directly, per average or usual portion, as established in § 101.9.

**6.** 21 C.F.R. § 101.3(e)(2) (1980) provides:

A food that is a substitute for and resembles another food shall not be deemed to be an imitation provided it meets each of the following requirements:

(i) It is not nutritionally inferior to the food for which it substitutes and which it resembles.

(ii) Its label bears a common or usual name that complies with the provisions of § 102.5 of this chapter and that is not false or misleading, or in the absence of an existing common or usual name, an appropriately descriptive term that is not false or misleading. The label may, in addition, bear a fanciful name which is not false or misleading.

ty for food products, including cheese substitutes. *See* 43 Fed.Reg. 42, 118–42, 141 (1978). The Federation has participated in this proceeding. Should the FDA promulgate regulations that establish standards of identity for cheese substitutes, cheese substitutes would acquire a common or usual name and would thereby qualify for automatic exemption from the imitation labeling requirement. *See* 21 C.F.R. § 101.-3(e)(3) (1980).[7]

In 1979 the Federation filed two petitions with the FDA seeking, respectively, revocation of 21 C.F.R. § 101.3(e) (1980) and withdrawal of the proposed regulations adopting standards of identity for cheese substitutes. At the same time, the Federation sought enforcement action from the FDA against producers of cheese substitutes for misbranding. The FDA notified the Federation that it had forwarded the Federation's letters together with the labels of allegedly misbranded cheese substitute products "to the respective [FDA district offices] in whose area the manufacturers are located ·for their appropriate attention." After further correspondence, the FDA informed the Federation that budgetary constraints had forced it to set investigative and enforcement priorities and that it had assigned its lowest priorities to "food economics and food standards." The FDA accordingly concluded that it "expect[ed] no actions in the near future concerning the cheese substitute products indicated in [the Federation's] letters."[8]

The Federation thereafter filed its complaint in this action. The Federation principally sought mandatory relief ordering the FDA to enforce the Act and the regulation against manufacturers of cheese substitute products and to prevent the agency from sanctioning the use of labels bearing the words "cheese substitute" or the like rather than "imitation cheese." The Federation also sought declaratory relief holding unlawful the FDA's "decision to exempt from labeling as 'imitation' * * * food products made in semblance of and offered for sale in substitution for any standardized cheese or cheese related product[.]"

## II. The Federation's Appeal.

In urging reversal of the district court judgment, the Federation renews its claims for declaratory and mandatory relief. These claims depend roughly on two contentions: (1) that 21 C.F.R. § 101.3(e) (1980) is unlawful under the Act and, in the alternative, (2) that the FDA has violated its own regulation by approving the marketing of products labeled as "cheese substitutes." Because we reject these contentions, we hold that the district court did not abuse its discretion in declining to issue either mandatory or declaratory relief.

### A. The Unlawfulness of the Regulation.

The FDA enacted 21 C.F.R. § 101.3(e) (1980) pursuant to the Act's provision authorizing the promulgation of regulations to efficiently enforce the Act. *See* 21 U.S.C. § 371(a) (1976). The Federation challenges the regulation as exceeding the FDA's statutory authority and as otherwise inconsistent with the Act.

■ The Federation contends that the issue of statutory authority, as a question of law, should not be deferred to the FDA. We agree that the FDA possesses no special expertise in addressing legal questions, and that the courts are the final arbiters on issues of statutory construction. *See Volkswagenwerk v. Federal Maritime Commis-*

---

**7.** This subsection of the regulation provides that a food for which a common or usual name is established by regulation and which complies with all applicable requirements shall not be deemed to be an imitation.

**8.** The FDA stated that it was "not aware of any situations where we have accepted the term 'Cheese Substitute', unqualified, as an appro-priately descriptive name for products which substitute for and resemble cheese. We have not, however, objected to such names as '_____ cheese substitute, made from vegetable fat or _____', if the product met the [nutritional equivalency] provisions of 21 C.F.R. § 101.-3(e)."

*sion,* 390 U.S. 261, 272, 88 S.Ct. 929, 19 L.Ed.2d 1090 (1968). Nevertheless, an agency's construction of its operational statute is entitled to deference by the courts. *Medical Center of Independence v. Harris,* 628 F.2d 1113, 1117–18 (8th Cir. 1980); *Blue Cross Association v. Harris,* 622 F.2d 972, 978–79 (8th Cir. 1980). Ordinarily, this construction will be upheld if it has a reasonable basis in law and does not frustrate congressional policy. *Medical Center of Independence v. Harris, supra,* 628 F.2d at 1118.

■ In *Federation of Homemakers v. Schmidt, supra,* 539 F.2d at 743–44, the D.C. Circuit applied these principles in explicitly rejecting the arguments advanced by the Federation here. The court held that the regulation successfully reconciled the Act's objective of alerting the public to inferior products with the Act's proscription against false or misleading labels.[9] *See* 21 U.S.C. § 343(a) (1976). Moreover, the court held that "the regulation is well within the zone of reasonableness required of agency rulemaking." *Federation of Homemakers v. Schmidt, supra,* 539 F.2d at 743–44. We agree with the D.C. Circuit that the regulation in question is valid for all the reasons adduced in its thoughtful opinion.

## B. *FDA Violation of the Regulation.*

■ The Federation also contends that the FDA has sanctioned and approved the sale in interstate commerce of misbranded "cheese substitutes", in violation of the Act and the regulation.[10] The Federation therefore sought mandatory relief ordering the FDA to initiate enforcement proceedings against the manufacturers of cheese substitutes or declaratory relief establishing the illegality of the FDA's alleged conduct. The district court held that because the initiation of such enforcement proceedings was committed to the FDA's discretion by law, the Federation's factual allegations failed to state a claim upon which relief could be granted. We agree with the district court's conclusion as to the Federation's alternative claim.

The executive branch and its departments enjoy a discretion in the initiation of investigative, enforcement, and prosecutorial actions limited only by constitutional strictures and relevant statutory directives. *See generally, United States v. Alarik,* 439 F.2d 1349 (8th Cir. 1971); *Newman v. United States,* 382 F.2d 479 (D.C.Cir.1967). As we stated in *Terminal Freight Handling Co. v. Solien,* 444 F.2d 699 (8th Cir. 1971), *cert. denied,* 405 U.S. 996, 92 S.Ct. 1246, 31 L.Ed.2d 465 (1972):

> Generally those engaged in prosecutorial or enforcement activities are allowed a wide discretion and considerable latitude on when to file charges and against whom charges are to be filed. This is necessarily so for many reasons, some more obvious than others. The resources of those engaged in prosecutorial activities as well as the resources of all agencies of the Government and the country itself are not unlimited. Priorities must be established and the resources available utilized to carry out the primary object of the enforcement activity. * * * However, this general prosecutorial discretion is neither absolute nor unfettered, and where an appropriate statute directs mandatory action, the prosecutorial discretion is thus narrowed and limited.

---

**9.** The court held that neither legislative history nor the Act's undefined use of the term "imitation" in § 403(c), 21 U.S.C. § 343(c) (1976), demonstrated the regulation's inconsistency with congressional objectives. *Federation of Homemakers v. Schmidt, supra,* 539 F.2d at 743.

**10.** We note some inconsistency in appellants' contention. On the one hand, appellants maintain that "no determination has been made that [cheese substitutes] are not 'nutritionally inferior to [the] food' for which they substitute" in violation of the regulation. On the other hand, appellants argue that the regulation was "inchoate" because the FDA had failed to adopt a standard of nutritional equivalency or because no such standard existed.

[*Terminal Freight Handling Co. v. Solien, supra,* 444 F.2d at 708.]

After carefully reviewing the Act, we have found no provision which narrows or limits the discretion of the FDA to investigate, enforce, or prosecute alleged violations of the Act or its regulations.[11] Thus, we conclude that the Federation's complaint which seeks the initiation of investigative, enforcement, or prosecutorial proceedings fails to state a claim upon which either mandatory or declaratory relief can be granted.[12] *See Haleston Drug Stores, Inc. v. NLRB,* 187 F.2d 418, 420–22 (9th Cir.), *cert. denied,* 342 U.S. 815, 72 S.Ct. 29, 96 L.Ed. 616 (1951); *Crooker v. Securities and Exchange Commission,* 161 F.2d 944, 949 (1st Cir. 1947). *Cf. Dunlop v. Bachowski,* 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975); *Howard v. Hodgson,* 490 F.2d 1194 (8th Cir. 1974).

### III. *Conclusion.*

We have carefully reviewed the record, the regulation, and each of the Federation's arguments in this case. We affirm that part of the district court's memorandum and order upholding the regulation. We also affirm the district court's dismissal of the Federation's request for mandatory and declaratory relief.

---

11. We note parenthetically that, although the Act empowers the FDA to investigate violations, the FDA itself does not prosecute violations of the Act. The Act provides for the FDA's reporting of violations to the United States for all enforcement proceedings. *See* 21 U.S.C. §§ 336–337 (1976).

12. Moreover, even if we could construe the complaint as setting forth allegations establishing some invasion of the Federation's rights, mandatory or declaratory relief might be deemed inappropriate in this case because the FDA, in a pending rulemaking proceeding, is considering the issue of the labeling of cheese substitute products.