# HOUSTON ET AL. *v.* ST. LOUIS INDEPENDENT PACKING COMPANY.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 264.   Argued March 20, 1919.—Decided April 14, 1919.

Under the Meat Inspection Act, the Secretary of Agriculture is authorized to prohibit the use of the word "sausage" as false and deceptive, when applied to a compound of meat, with added cereal in excess of 2 per cent. and added water or ice in excess of 3 per cent. P. 483.

The act does not require the Secretary to mark a meat-food product "inspected and passed" merely because it is wholesome and free from dyes and chemicals, if it is to be sold under a deceptive name. P. 484.

Whether the name "sausage" is deceptive as applied to a compound of meat with added cereal and water is a question of fact which the statute submits to the determination of the Secretary, under the power it gives him to make rules and regulations for carrying it into effect, and his decision, when fairly arrived at on substantial evidence, is conclusive. *Id.*

242 Fed. Rep. 337, reversed.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Frierson*, with whom *Mr. Charles S. Coffey* was on the brief, for appellants.

*Mr. Alexander F. Reichmann*, with whom *Mr. Abram B. Stratton* was on the brief, for appellee.

MR. JUSTICE CLARKE delivered the opinion of the court.

The Secretary of Agriculture, assuming to exercise authority under the "Meat Inspection" Act, approved

June 30th, 1906, c. 3913, 34 Stat. 669, 676, 678, promulgated a regulation, effective April 1st, 1913, in part as follows, viz:

"Washington, D. C., Feb. 28, 1913.

"For the purpose of preventing the use in interstate or foreign commerce of meat or meat food products under any false or deceptive name, under the authority conferred on the Secretary of Agriculture by the provisions of the act of Congress, approved June 30, 1906 (34 Stat. 674), Regulation 18 is hereby amended by the addition of sections 15 and 16, to read as hereinafter set out.

James Wilson,
Secretary of Agriculture.

"(Section 16, paragraph 1.)   Sausage shall not contain cereal in excess of two per cent: When cereal is added its presence shall be stated on the label or on the product.

"(Paragraph 2.)   Water or ice shall not be added to sausage, except for the purpose of facilitating grinding, chopping and mixing, in which case the added water or ice shall not exceed three per cent., except as provided in the following paragraph."

Immediately after the effective date of this regulation the appellee, an extensive manufacturer of sausage, correctly interpreting it as prohibiting the marking, stamping or labeling as "sausage" any compound of chopped or minced meats containing cereal in excess of two per cent. and water or ice in excess of three per cent. (except as otherwise provided), filed the bill in this case in the District Court of the United States for the Eastern Division of the Eastern District of Missouri, averring that "sausage" made by it with cereal and water in excess of the requirements of the regulation was wholesome and fit for human food and that the effect of the order would be to exclude its product from interstate commerce, to its great and irreparable damage.   The prayer was that

the defendants, the Secretary of Agriculture and the officers subordinate to him, be enjoined from refusing to mark as "Inspected and passed" all "sausage" manufactured by the petitioner found to be sound, healthful, and wholesome, and which contained no dyes, chemicals, preservatives or ingredients which would render such "sausage" unsound, unwholesome or unfit for human food; that they be required by mandatory injunction to mark such "sausage" as "Inspected and passed," and that the regulation be declared to be unauthorized by law, null and void.

The District Court denied the application, on the bill, for an injunction (204 Fed. Rep. 120), but on appeal that holding was reversed and the case was remanded by the Circuit Court of Appeals (215 Fed. Rep. 553).

The Secretary of Agriculture then answered admitting that it was the purpose of the Department to refuse, and that it had refused, to mark as "Inspected and passed" as "sausage" the product of the appellee unless manufactured in compliance with the regulations complained of, and, as warrant therefor, he quoted in his answer from the act of Congress the following:

"*No such meat or meat food products shall be sold or offered for sale by any person, firm, or corporation in interstate or foreign commerce under any false or deceptive name; but established trade name or names which are usual to such products and which are not false and deceptive and which shall be approved by the Secretary of Agriculture are permitted,*" and that "said Secretary of Agriculture shall, from time to time, make such rules and regulations as are necessary for the efficient execution of the provisions of this Act, and all inspections and examinations made under this Act shall be such and made in such manner as described in the rules and regulations prescribed by said Secretary of Agriculture not inconsistent with the provisions of this Act."

Answering the allegation of the bill that the appellee's trade in "sausage" would be ruined by the enforcement of the regulation, the Secretary of Agriculture averred that the appellee manufactured and sold large quantities of sausage which did not contain any cereal or added water, and added:

"That the manufacture and sale of a product as sausage which product contains added cereal and water in quantities as described in plaintiff's bill, or in any quantities. in excess of the amount designated in said regulation, effective April 1, 1913, is false and deceptive; that the ordinary consumer of sausage manufactured by this plaintiff has no knowledge or information that sausage contains cereal and added water, that such information is not conveyed to persons who purchase plaintiff's sausage at retail by any method of marking or branding now or heretofore in use by plaintiff, and that it is impracticable and impossible in the ordinary course of manufacture and distribution of sausage to mark or brand the same so that the purchaser at retail or the consumer will be informed as to the amount of cereal and water added thereto."

An elaborate trial on the merits resulted in the dismissal of the bill by the District Court, but this judgment was reversed by a divided Circuit Court of Appeals and the case was remanded with directions to award the appellee injunctions substantially as prayed for. The case is here for review on appeal.

The claim made by the Government in the lower courts that the compound of meats, cereal and water, which the appellee claimed the right to sell as "sausage" was unwholesome is abandoned in this court, and the only question argued and submitted is whether it was within the power of the Secretary of Agriculture to prohibit the use of the word "sausage" as false and deceptive, within the meaning of the act, when applied to the appellee's product.

The foregoing statement shows that the question for decision in this court is: Whether, in promulgating the regulation assailed, the Secretary of Agriculture acted arbitrarily and in excess of the authority given him by the act of Congress, to make, from time to time, such rules and regulations as are necessary for the efficient enforcement of the act, or whether he acted in good faith and upon substantial grounds in deciding that the sale of appellee's product as "sausage" resulted in deception of purchasers and consumers, so that his determination of such question of fact was within the power conferred upon him as the head of an executive department of the Government and is not subject to review by the courts.

The contention of the Government is that the product of the appellee being a meat food product, put up in containers—casings or canvas coverings—it falls within the prohibition of the act that such product shall not be sold or offered for sale by any corporation in interstate commerce "under any false or deceptive name," and that the regulation being for the purpose of preventing its sale under the false or deceptive name of "sausage," it is plainly within the authority given to the Secretary of Agriculture to make rules and regulations for the efficient execution of the act.

On the other hand, the contention of the appellee is that the product being wholesome and containing no dyes or chemicals, which render it unfit for human food, an earlier provision of the act applies, which it is asserted deprives the Secretary of all discretion in such a case and requires that he shall cause the product to be marked "Inspected and passed;" and also, it is claimed, that the word "sausage," when qualified as was required by prior regulations by including in the label such expressions as "Cereal added," or "Sausage and cereal," was not a false or deceptive name.

The contention of the appellee that if its product is

wholesome, and if it does not contain dyes and chemicals, the act imperatively requires the Secretary to mark its product as "Inspected and passed" is clearly unsound if the word "sausage" as applied to it is false and deceptive, for plainly the provision of the act requiring the marking of the product must be harmonized with the subsequent provision that no such meat or meat food product shall be sold or offered for sale under any false or deceptive name.

Whether or not the term "sausage," when applied to the product of the appellee, in which more than the permitted amount of cereal and water is used, is false and deceptive is a question of fact, the determination of which is committed to the decision of the Secretary of Agriculture by the authority given him to make rules and regulations for giving effect to the act, and the law is that the conclusion of the head of an executive department on such a question will not be reviewed by the courts, where it is fairly arrived at with substantial evidence to support it.

This rule has been most frequently applied in Land Department cases, but often also to decisions by heads of other departments.

Thus, to the action of the Secretary of the Navy in *Decatur* v. *Paulding*, 14 Pet. 497; to the action of the Secretary of the Interior, on full consideration of the subject, in *Gaines* v. *Thompson*, 7 Wall. 347, and in *Burfenning* v. *Chicago &c. Ry. Co.*, 163 U. S. 321; and to decisions of the Postmaster General in *Bates & Guild Co.* v. *Payne*, 194 U. S. 106, and *Smith* v. *Hitchcock*, 226 U. S. 53. The doctrine has been extended by act of Congress to decisions by the Secretary of Commerce and Labor, *Tang Tun* v. *Edsell*, 223 U. S. 673; *Zakonaite* v. *Wolf*, 226 U. S. 272; *Lewis* v. *Frick*, 233 U. S. 291.

The scope of the rule is illustrated by this court, saying in *Johnson* v. *Drew*, 171 U. S. 93, 99:

"If there is any one thing respecting the administra-

tion of the public lands which must be considered as settled by repeated adjudications of this court, it is that the decision of the land department upon mere questions of fact is, in the absence of fraud or deceit, conclusive, and such questions cannot thereafter be relitigated in the courts."

And in *New Orleans* v. *Paine*, 147 U. S. 261, 264:

"In *Noble* v. *Union River Logging Railroad*, decided at the present term (*ante* 165,) we had occasion to examine the question as to when a court was authorized to interfere by injunction with the action of the Head of a Department, and came to the conclusion that it was only where, in any view of the facts that could be taken, such action was beyond the scope of his authority. If he were engaged in the performance of a duty which involved the exercise of discretion or judgment, he was entitled to protection from any interference by the judicial power."

That the case before us is one for the application of this rule is shown by the record, which contains an interesting history of what large manufacturers have come, in a more or less gradual progress, to regard as the proper ingredients of the product which they have sold as sausage, and which also shows, without conflict, that the ultimate purchaser and consumer of the product is not informed and in general does not know of the presence of cereal and added water in it. The evidence shows that the poorer classes of beef and pork are used in making sausage, such as trimmings, hearts, ears, cheeks, liver, snouts and tripe, "and all that kind of things," but the preferred material is bull meat; that such meat, other than bull meat, is dry and has not the cohesive properties which will unite it when ground or minced into the mass popularly known as "sausage" and that, for this reason, corn meal, potato flour and other like substances have come to be used by the trade as "binders" to give it the desired cohesiveness and appearance.

The president of the appellee testified that when he first began making sausage twenty-five years ago he used anywhere from five per cent. to twelve per cent. of cereal and that when the regulation was promulgated he was using two or three per cent. to ten per cent. when he used any at all, but that in a part of his product he did not use any, notably in that which was sent into Pennsylvania, where the use of cereal was prohibited by statute; that when he used ten per cent. of cereal he added from fifteen to twenty per cent. of water, and that in general water was added in double the percentage of cereal used; and that the cereal, usually corn meal or corn flour, was resorted to to cheapen the product and cost about two cents a pound, while the meat used cost from six to fifteen cents a pound.

Before the regulation assailed was promulgated cereal and water were generally used by large manufacturers of sausage, but all of the representatives of manufacturers, other than those of the appellee, who were called as witnesses, testified that they were obeying the regulation, and the agreement of such witnesses was general that retail purchasers and consumers did not know of the presence of cereal in what they were buying as sausage.

There is conflict in the evidence as to whether the use of cereal in excess of the prescribed amounts renders the product less digestible and wholesome, whether it reduces its food value, and whether the sausage will ferment in a shorter time than when cereal is not used at all, or when used in smaller quantities.

The result, thus stated, of the examination of the record before us shows, beyond controversy, that the Secretary of Agriculture in promulgating the regulation complained of acted on substantial evidence and with sufficient reason in concluding that persons purchasing or using as "sausage" the appellee's compound of various meats, cereal and water would be deceived as to its composition and

as to its value as a food product, and we cannot say that it was an abuse of discretion to prohibit the use of the word "sausage" as applied to it, rather than to prescribe qualifying terms explanatory of it. Few purchasers read long labels, many cannot read them at all, and the act of Congress having committed to the head of the department, constantly dealing with such matters, the discretion to determine as to whether the use of the word "sausage" in a label would be false and deceptive or not, under such circumstances as we have here, this court will not review, and the Circuit Court of Appeals should not have reviewed and reversed the decision of the Secretary of Agriculture.

The decree of the Circuit Court of Appeals for the Eighth Circuit is reversed and the case remanded for further proceedings not inconsistent with this opinion.

*Reversed.*