## FEDERATION OF HOMEMAKERS
### v.
### Earl L. BUTZ et al., Appellants.
### No. 71–1611.

United States Court of Appeals,
District of Columbia Circuit.

Argued June 6, 1972.

Decided Aug. 18, 1972.

Mr. Michael Kimmel, Atty., Dept. of Justice, with whom Mr. L. Patrick Gray, III, Asst. Atty. Gen. at the time the brief was filed, and Thomas A. Flannery, U. S. Atty. at the time the brief was filed, and Alan S. Rosenthal, Atty., Dept. of Justice, was on the brief, for appellants.

Mr. Edward Berlin, Washington, D. C., for appellee.

Mr. H. Templeton Brown, Chicago, Ill., filed a brief on behalf of the American Meat Institute as amicus curiae urging reversal.

Before Mr. Justice CLARK* of the Supreme Court of the United States, and LEVENTHAL and ROBB, Circuit Judges.

ROBB, Circuit Judge:

The appellee, Federation of Homemakers, brought this action in the district court to challenge a regulation promulgated by the Secretary of Agriculture, 9 C.F.R. § 319.180. The regulation, prescribing the labeling to be employed on certain sausage products, permits frankfurters to be labeled "All Meat", "All Beef", "All Pork", or "All [species]" [1] as the case may be, although they contain, in addition to meat, 10 percent water and 5 percent other ingredients, including corn syrup, spice flavoring and curing additives. At the same time the regulation prohibits the use of the "All Meat" label on frankfurters containing binders and extenders,[2] such as dried milk, cereal or meat by-products aggregating not more than 3½ percent of the ingredients of the frankfurters.

On cross motions for summary judgment the district court granted the plaintiff's motion, held the regulation invalid, and permanently enjoined the Secretary from enforcing the labeling policy which it embodied.[3]

---

* Sitting by designation pursuant to Title 28, U.S.C. Section 294(a).

1. Species permitted under the regulation include beef, pork, veal, mutton, lamb, goat meat, chicken, or turkey, with limitations as prescribed therein. 9 C.F.R. § 319.180. For convenience we will refer to the "All Meat" label throughout this opinion, although our holding applies to the various species labels as well.

2. Binders include such products as dried milk and cereal, which are necessary in some production processes to provide the necessary cohesiveness to the frankfurter, although some companies have eliminated them through the development of new production techniques. Extenders include meat by-products mixed with the other ingredients of the frankfurter.

3. The complaint alleges that the Federation of Homemakers is a non-profit educational association of individual consumers, dedicated "to protecting the national integrity of food products and to

The Secretary of Agriculture under the Meat Inspection Act of 1967, 21 U.S.C. §§ 601 et seq., may prescribe the labeling of meat or meat food products [4] in order to avoid the use of a label which would be false or misleading to the consumer. 21 U.S.C. § 607(d), (e). Pursuant to this authority, the Secretary promulgated the challenged regulation 9 C.F.R. § 319.180. That regulation establishes, among other things, standards governing the use of the "All Meat" label on frankfurters and other cooked or smoked sausage products.[5] For purposes of this case the relevant parts of the regulation can be summarized as follows: Sausage products labeled "All Meat" may contain, in addition to meat, added water, corn syrup, salt, spices, and curing agents in designated quantities. 9 C.F.R. §§ 318.7, 319.180. The non-meat ingredients in "All Meat" sausages constitute approximately 15 percent of the finished product. Frankfurters which cannot be labeled "All Meat" differ from the "All Meat" variety in that they contain binders and extenders [6] such as dried milk, cereal, or meat by-products. These added ingredients cannot constitute in the aggregate more than 3½ percent of the total ingredients of the frankfurters. 9 C.F.R. § 319.180. Thus, the only difference between "All Meat" frankfurters and other frankfurters is the existence of up to 3½ percent binders and extenders in the latter; in all other respects the two products are subject to identical standards of composition under the applicable regulations.

The question presented here is whether the label "All Meat", applied to a product containing 85 percent meat, and employed to distinguish such products from those containing 3½ percent binders and extenders and 81½ percent meat, is false or misleading under 21 U.S.C. § 607(d), which provides that:

> No article subject to this subchapter shall be sold or offered for sale by any person, firm, or corporation, in commerce, under any name or other marking or labeling which is false or misleading, or in any container of a misleading form or size, but established trade names and other marking and labeling and containers which are not false or misleading and which are approved by the Secretary are permitted.

If the "All Meat" label is false or misleading, the challenged regulation must be invalidated, for the Secretary's action in promulgating such a regulation would be in excess of his authority and "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); see Houston v. St. Louis Independent Packing Co., 249 U.S. 479, 483, 39 S.Ct. 332, 63 L.Ed. 717 (1919).

It is indisputable that the label "All Meat" as employed in this case is inaccurate. The words used are clear and unequivocal, and they import a description which cannot be attached to a product which is "Part Meat" or "All Meat, Water, Condiments, and Curing Agents". The fact is that frankfurters labeled "All Meat" are simply not all meat.

The Secretary points out, and it is conceded by the Federation, that because of technical limitations no frankfurter

---

assuring the food consumer informative and non-deceptive labeling". No question of the standing of the Federation has been raised by the government on appeal. The district court faced this issue and decided it in favor of the appellee, relying on Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), and Environmental Defense Fund, Inc. v. Hardin, 138 U.S.App.D.C. 391, 428 F.2d 1093 (1970). Federation of Homemakers

v. Hardin, 328 F.Supp. 181 (D.D.C., April 20, 1971) (Memorandum opinion).

4. Defined in 21 U.S.C. § 601(j).

5. Although the challenged labeling policy in 9 C.F.R. § 319.180 applies to a number of cooked or smoked sausage products, we shall refer throughout this opinion to frankfurters, the product at issue in this litigation.

6. See footnote 2.

can contain more than 85 percent meat. Additional ingredients, such as condiments and water, are essential to supply the properties of taste and texture that are common to frankfurters and without which they would not be recognized as frankfurters. In other words, the Secretary says that by definition a frankfurter is a product containing not more than 85 percent meat. From this premise the Secretary argues that he reasonably determined that the term "all meat frankfurter" is not misleading when applied to a product having all the meat a frankfurter can technically contain.

If frankfurters containing 85 percent meat were the only kind known to man the Secretary's argument might be persuasive, particularly to one familiar with the niceties of frankfurter composition and production. Our difficulty is that there are other frankfurters, specifically those containing $81\frac{1}{2}$ percent meat and $3\frac{1}{2}$ percent binders and extenders; and the regulation forbids the use of the "All Meat" label on such frankfurters. We are thus confronted with the question whether there is a rational basis for the distinction in the labels that may be applied to the two types of frankfurters. If a frankfurter containing 85 percent meat may be labeled all meat, then why must a frankfurter containing $81\frac{1}{2}$ percent meat be denied that label? The Secretary answers in his brief (pp. 10–11) that ". . . the 'all meat' label affirmatively has assisted the consumer in rapidly distinguishing such a frankfurter [the 85 percent meat frankfurter] from those which contain cereal, milk products or other ingredients which are neither meat nor processing agents essential to the manufacture of what is commonly accepted to be a frankfurter." We are not persuaded by the Secretary's argument.

The record discloses that in 1955 about one-third of the total frankfurter production in this country was of the "All Meat" type, the remaining two-thirds consisting of sausage with binders or extenders added. As of 1970, however, nearly 70 percent of the total sausage production was of the "All Meat" type. We think it plain from this that "All Meat" frankfurters are preferred by consumers. The "All Meat" label is therefore an indication that a frankfurter bearing it occupies a preferred status, or is at least considered to be in some way superior to a frankfurter not so labeled. The Secretary says that the element of superiority is the absence of extenders or binders in the "All Meat" frankfurter, and that the distinction is made plain by the "All Meat" label. Thus the issue presented by the Secretary's argument is whether there is a reasonable basis for his conclusion that the label "All Meat" conveys to an ordinary consumer the message that a frankfurter so labeled, while containing only 85 percent meat, does not contain cereal or milk products or other binders and extenders. Armour & Co. v. Freeman, 113 U.S.App.D.C. 37, 43, 304 F.2d 404, 410, cert. denied, 370 U.S. 920, 82 S.Ct. 1559, 8 L.Ed.2d 500 (1962) (Prettyman, Circuit Judge, concurring); United States v. 88 Cases, More or Less, Etc., 187 F.2d 967, 971 (3d Cir.), cert. denied, 342 U.S. 861, 72 S.Ct. 88, 96 L. Ed. 648 (1951).

Do the words "All Meat" mean to an ordinary consumer, as distinguished from an expert, that a frankfurter in a package on which these words appear contains 85 percent meat and other components, and not $81\frac{1}{2}$ percent meat and other components? We think the answer to the question is plain, that the words do not convey that meaning and distinction, and that the Secretary could not reasonably conclude that they do. As employed, therefore, the "All Meat" label is misleading and deceptive.

The Secretary argues that the meaning of the words "All Meat" and the calculation of their effect upon a consumer are matters for him to determine in the exercise of his expert judgment. We must disagree, for the common meaning of the words is clear and unequivocal, and we find no basis in the record for the Secretary's conclusion that these words, in a label intended for the ordi-

nary consumer, convey the kind of technical and esoteric message that the Secretary finds in them. Nor is the vice of the label cured by the accompanying language which identifies the processing agents contained in "All Meat" frankfurters. *See* 9 C.F.R. § 316.11(b) and § 317.8(b)(16). Few purchasers read such detailed specifications. Houston v. St. Louis Independent Packing Co., 249 U.S. 479, 487, 39 S.Ct. 332, 63 L.Ed. 717 (1919).

The Secretary relies upon Armour & Co. v. Freeman, 113 U.S.App.D.C. 37, 304 F.2d 404, cert. denied, 370 U.S. 920, 82 S.Ct. 1559, 8 L.Ed.2d 500 (1962). In that case we held that a ham containing 10 percent added water was nevertheless a ham so that a regulation requiring it to be labeled "Imitation Ham" could not be sustained. The Secretary reasons that a frankfurter may still be an "All Meat" frankfurter notwithstanding a similar content of water. The argument misses the mark. We do not suggest that a frankfurter containing 85 percent meat, 10 percent water and 5 percent other ingredients is not a frankfurter; we hold only that the label "All Meat" is deceptive and misleading when used to distinguish such a frankfurter from one containing 81½ percent meat, together with water, condiments, curing agents and binders and extenders.

The district court ordered the Secretary to discontinue the use of the "All Meat" label within six months, and the court retained jurisdiction in the interim to require reports on the implementation of its order and to permit the parties to petition for modification of the court's timetable. We agree with this result but we think that in the interim the Secretary should develop, prescribe and submit to the district court revised labels that accurately and without deception distinguish the different types of frankfurters from each other and from competitive meats. *See* 21 U.S.C. § 607(e). As we suggested in Armour & Co. v. Freeman, 113 U.S.App.D.C. 37, 39, 304 F.2d 404, 406, cert. denied, 370 U.S. 920, 82 S.Ct. 1559, 8 L.E.2d 500

(1962), such a revision would have made this litigation unnecessary. Accordingly the judgment is modified to provide that while the district court retains jurisdiction, the Secretary shall develop, prescribe and submit to the court such revised labels. As so modified the judgment is

Affirmed.