AMERICAN PUBLIC HEALTH ASSO-
CIATION et al., Appellants,

v.

Earl BUTZ, Secretary of Department of
Agriculture, et al.

No. 73-1142.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 22, 1974.

Decided Dec. 19, 1974.

Rehearing En Banc Denied April
9, 1975.

Irvin B. Nathan, Washington, D. C.,
with whom Simon Lazarus, III, and
Charles R. Halpern, Washington, D. C.,
were on the brief, for appellants.

Richard L. Beizer, Asst. U. S. Atty.,
with whom Harold H. Titus, Jr., U. S.
Atty., John A. Terry and J. Michael
McGarry, III, Asst. U. S. Attys., were on
the brief, for appellees. Earl J. Silbert,
U. S. Atty., also entered an appearance
for appellee.

Before ROBINSON and ROBB, Circuit
Judges, and MATTHEWS,* Senior Dis-
trict Judge for the United States Dis-
trict Court for the District of Columbia.

ROBB, Circuit Judge:

As plaintiffs in the District Court our
appellants alleged in their complaint that
the Secretary of Agriculture was violat-
ing certain provisions of the Wholesome
Meat Act, 21 U.S.C. §§ 601 et seq., and
the Wholesome Poultry Products Act, 21
U.S.C. §§ 451 et seq. Specifically, they
alleged that the Secretary was wrongful-
ly refusing to affix to meat and poultry
products, inspected by the Department
of Agriculture, labels containing han-
dling and preparation instructions to
protect the consumer against food poi-

* Sitting by designation pursuant to 28 U.S.C. § 294(c).

soning caused by salmonellae and other bacteria. The complaint prayed that the Secretary be enjoined "from affixing the label 'U.S. Passed and Inspected' or 'U.S. Inspected for Wholesomeness' on meat and poultry unless it is accompanied by an adequate explanation to the consumer that the product may contain organisms capable of causing food poisoning or infection which will multiply unless the product is properly handled and cooked, along with proper instructions on how to minimize such risk." In substance, the plaintiffs claimed that the official inspection labels constituted misbranding. On cross motions for summary judgment the District Court granted the defendants' motion and dismissed the case.

In the Poultry Products Inspection Act, Pub.L.No.85–172 (Aug. 28, 1957), as amended by the Wholesome Poultry Products Act, Pub.L.No.90–492 (Aug. 18, 1968), and the Federal Meat Inspection Act of March 4, 1907, ch. 2907, 34 Stat. 1260, as amended by the Wholesome Meat Act, Pub.L.No.90–201 (Dec. 15, 1967), Congress declared its intent to protect the health and welfare of consumers and to prevent and eliminate burdens on commerce by assuring that meat and poultry products are wholesome and properly labeled. 21 U.S.C. §§ 451, 452, 602. To help achieve these ends, Congress required inspections at packing plants for both meat and poultry and their products. 21 U.S.C. §§ 455, 603–605. In the case of meat, if the item is found to be not adulterated, Congress has further required inspectors appointed by the Secretary of Agriculture to mark, stamp or label the item "Inspected and passed." 21 U.S.C. §§ 604, 606. In the case of poultry, if the item is found to be not adulterated, the Secretary is required to affix an official inspection legend on the item or on its container. 21 U.S.C. §§ 453(h)(12), 457(a). Under his statutorily delegated authority to promulgate necessary regulations, 21 U.S.C. §§ 463(b), 607(c), the Secretary has provided markings for poultry and meat products. See 9 C.F.R. § 381.96 (1974) (poultry); 9 C.F.R. §§ 312.2, 312.3 (1974) (meat).

Salmonellae are bacteria found in meats, poultry, eggs and their products. Salmonellosis or "food poisoning" caused by the ingestion of salmonellae may produce nausea, abdominal cramps, vomiting, high fever, dizziness, headaches, dehydration and diarrhea. Preventive measures against salmonellae are care in cooking and storage of foods, and adequate refrigeration. To prevent cross-contamination from raw material to finished food, utensils, working surfaces and the hands of food preparers should be thoroughly washed. Proper cooking destroys salmonellae.

As alleged in the complaint, and established by the record, "The inspection procedures now required by the Wholesome Meat Act and the Wholesome Poultry Products Act do not include any investigation to detect the presence of salmonella in meat or poultry, because no such microscopic examination is considered feasible as a routine matter." The reason for this situation is apparent: a poultry inspector, for example, may conduct post mortem examinations of more than 10,000 birds in one day. Microscopic examination of each bird would obviously be impractical. Recognizing and accepting this fact the appellants do not seek revision of inspection techniques. They argue however that since salmonellae are likely to be present in all meat and poultry the inspection labels used by the Department of Agriculture create a false sense of security in consumers. In terms of the statutes the appellants say the inspection labels are "false or misleading" so that the meat and poultry to which they are affixed are "misbranded". See 21 U.S.C. § 453(h)(1), (12); 21 U.S.C. § 601(n)(1), (12). The remedy, according to the appellants, is the inclusion of preparation and handling instructions on each label.

The appellants presented their case to the Secretary of Agriculture in letters and conferences beginning with a letter on June 28, 1971. In this letter the appellants referred to a report issued by the Department of Agriculture on the salmonellae problem, together with other documentation, and urged the Secretary

to require the following label or some reasonable equivalent to be affixed to all raw meat and poultry approved for human consumption:

Caution: Improper handling and inadequate cooking of this product may be hazardous to your health. Despite careful government inspection, some disease-producing organisms may be present. Consult your local health department for information on the safe handling and preparation of this product.

In response the Department by letter of July 21, 1971, expressed its concern with the salmonellae problem and its recognition of the importance of control of salmonellosis. The Department quoted from a report of the National Research Council which stated:

" . . . the problem of controlling salmonellosis in man is greatly complicated because of the widespread distribution of the organisms in the environment and the many ways by which they can reach the host."

"Recent experience has implicated a variety of processed foods and drugs (e. g., egg products, dry milk, coconut, inactive dry yeast. . . .) in outbreaks of salmonellosis."

The Department's letter concluded that since "there are numerous sources of contamination which might contribute to the overall problem" it would be "unjustified to single out the meat industry and ask that the Department require it to identify its raw products as being hazardous to health. Such an act would have to apply to any and all sources of salmonellae in order to be fairly administered."

Dissatisfied with the Department's response of July 21 the appellants on July 29, 1971 again wrote to the Secretary requesting that he "review this situation once again, and in the interests of the consumers' health and safety . . . take prompt action to avoid the continuation of the mis-labeling and misbranding as 'U.S. Inspected' and 'U.S. Inspected for Wholesomeness' [of] contaminated raw meats and poultry." In response

the Department on August 18, 1971, wrote

. . . you appear to disregard the fact that the American consumer knows that raw meat and poultry are not sterile and, if handled improperly, perhaps could cause illness.

The Department's philosophy in this matter is that the salmonella problem can be handled most effectively at the consumer level where all contributing factors converge—where the final preparation of food takes place. The consumer education program which you have advocated would fit in well with this concept and would be instrumental in informing the American public of the proper methods for handling all foods, including meat and poultry, so that any hazard is reduced to a minimal level.

The Department reiterated this position in a letter of October 20, 1971 as follows:

You will recall that we firmly believed that the salmonella problem could be handled most effectively at the consumer level where final food preparation took place. We maintained then, and wish to reemphasize now, that a soundly designed consumer education program is the best manner in which to approach the entire problem of food-borne disease. Such a program would reduce the incidence of mishandling of foods and thereby reduce potential hazards to a minimum.

The Department is actively supporting a number of consumer education programs which are designed with this goal in mind. We would hope you and your respected organization would join with us in this effort.

On December 7, 1971 the appellants renewed their request and proposed a label to this effect:

WARNING: This product may contain bacteria which can cause food-poisoning. Refrigeration and adequate cooking will make it safe to eat. To keep bacteria from spreading to other foods: (1) Do not let other foods touch this uncooked product or the surfaces where it has been placed. (2) After

handling, carefully wash your hands and all equipment which touched the raw product.

In a meeting on December 21, 1971 between officials of the Department and representatives of the appellants the Department finally rejected the appellants' proposal and took the position that a consumer education program on the proper way to handle and prepare meat and poultry was the answer to the problem. This lawsuit followed.

The Wholesome Poultry Products Act, 21 U.S.C. §§ 453(h)(1) and (12), provides that an article is "misbranded"

(1) If its labeling is false or misleading in any particular;

\* \* \* \* \* \*

(12) If it fails to bear on its containers, and in the case of nonconsumer packaged carcasses (if the Secretary so requires) directly thereon, as the Secretary may by regulations prescribe, the official inspection legend . . . and, unrestricted by any of the foregoing, such other information as the Secretary may require in such regulations to assure that it will not have false or misleading labeling and that the public will be informed of the manner of handling required to maintain the article in a wholesome condition.

Similar provisions appear in the Wholesome Meat Act, 21 U.S.C. §§ 601(n)(1), (12). The appellants contend that the official inspection legends are false and misleading and therefore constitute misbranding within the meaning of these statutes, since the legends fail to warn against the dangers of salmonellae. The appellants argue further that the Secretary has abused his discretion by refusing to supplement the inspection legends with a warning and instructions for the storage and preparation of meat and poultry. We are not persuaded by the appellants' arguments.

The Wholesome Meat Act, 21 U.S.C. § 604, providing for inspections, requires that meat "found to be not adulterated shall be marked, stamped, tagged, or labeled as 'Inspected and passed'". The

"U.S. Inspected and passed" legend therefore conforms to the statute; and unless the presence of salmonellae makes meat "adulterated" the legend is not false or misleading. The term "adulterated" is defined by the statute, 21 U.S.C. § 601(m), and we think that the presence of salmonellae in meat does not constitute adulteration within this definition. The definition is directed at poisonous or deleterious additives and filthy, putrid or decomposed substances but not at substances such as salmonellae which may be inherent in the meat. This we think plainly appears from 21 U.S.C. § 601(m)(1) which provides:

The term "adulterated" shall apply to any . . . meat . . . :

(1) if it bears or contains any poisonous or deleterious substance which may render it injurious to health; *but in case the substance is not an added substance, such article shall not be considered adulterated under this clause if the quantity of such substance in or on such article does not ordinarily render it injurious to health*; [emphasis supplied.]

As the Department said in its letter of August 18, 1971 "the American consumer knows that raw meat and poultry are not sterile and, if handled improperly, perhaps could cause illness." In other words, American housewives and cooks normally are not ignorant or stupid and their methods of preparing and cooking of food do not ordinarily result in salmonellosis.

The Wholesome Poultry Products Act also refers to inspections and findings that poultry products are "not adulterated". 21 U.S.C. § 457(a). The definition of the term "adulterated" in the Act, 21 U.S.C. § 453(g), conforms to that found in the Wholesome Meat Act. The term "official inspection legend" is defined as "any symbol prescribed by regulations of the Secretary showing that an article was inspected for wholesomeness in accordance with this chapter." 21 U.S.C. § 453(m). This differs from the definition of the term "official inspection legend" found in the Wholesome Meat Act,

which is "any symbol prescribed by regulations of the Secretary showing that an article was inspected and passed in accordance with this chapter." 21 U.S.C. § 601(t). We think however that the term "inspected for wholesomeness" as used in the Wholesome Poultry Products Act means "inspected and found not to be adulterated". The term is so construed and defined by the Secretary in his regulations, 9 C.F.R. § 381.1(24) (1974), and this construction is confirmed by the House Report on the bill which became the Wholesome Poultry Products Act, Pub.L.No.90–492, 82 Stat. 791. This report evidences the intention of Congress to conform the provisions of the Wholesome Poultry Products Act to those of the Federal Meat Inspection Act, as amended. See H.R.Rep.No.1333, Apr. 30, 1968, 90th Cong., 2d Sess., in 1968 U.S.Code Cong. & Admin.News 3426, 3427, 3444–45. We conclude that the legend "inspected for wholesomeness" prescribed by the Secretary, conforms to the statute and is not false or misleading because of the possibility that salmonellae may be present in the poultry products inspected.

In construing both the Wholesome Meat Act and the Wholesome Poultry Products Act we are mindful that the presence of salmonellae can be detected only by microscopic examination. No one contends that Congress meant that inspections should include such examinations. We think it follows therefore that Congress did not intend the prescribed official legends to import a finding that meat and poultry products were free from salmonellae.

Both statutes provide that an article is "misbranded" if it fails to bear on its container or the inspection label "such other information as the Secretary may require . . . to assure that it will not have false or misleading labeling and that the public will be informed of the manner of handling required to maintain the article in a wholesome condition." 21 U.S.C. §§ 453(h)(12), 601(n)(12). Plainly, these provisions give the Secretary discretion to determine what labeling, if any, will be required in addition

to the official inspection stamp. Although the appellants recognize this discretion in the Secretary they say he has abused his discretion in failing to require cautionary labeling. We are unable to accept this conclusion. After carefully considering the appellants' proposals the Secretary concluded that warning labels were not the answer to the problem and that the solution was a consumer education program which the Department proposed to undertake. We cannot say that this conclusion was unreasonable; certainly we may not substitute our judgment for that of the Secretary.

The appellants rely heavily on Federation of Homemakers v. Butz, 151 U.S. App.D.C. 291, 466 F.2d 462 (1972), but we think that case is not controlling. The question there presented was whether there was a rational distinction between the labels that might be applied to two types of frankfurters. We held there was not and that a label "All Meat" when applied to one and not the other was therefore misleading and deceptive. Specifically, we held that the Secretary could not reasonably conclude that "All Meat" meant 85% meat and not 81½% meat and that consumers would so understand. In the case now before us the Secretary has made no discriminatory or irrational distinction between two types or species of the same product, nor is it reasonable to believe that the official labels, by misleading, will cause consumers to abandon customary methods of preparing food for the table.

The judgment is

Affirmed.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge (dissenting):

A majority of the court holds that the official inspection legends challenged herein are not "false or misleading," and that therefore the products inspected are not "misbranded," because the products are not to be considered "adulterated" merely by reason of the presence of salmonellae. They further hold that the Secretary did not abuse his discretion when he decided against cautionary la-

bels and instead embarked on a consumer education program. I must dissent because I am unable to conclude that on these branches of the litigation "there is no genuine issue as to any material fact."[1] I would accordingly reverse the summary judgment that the District Court awarded appellees and remand the case for trial.

Meat or poultry is not "adulterated" within the meaning of the relevant statutes if the presence of salmonellae "does not ordinarily render it injurious to health."[2] The court apparently takes the position that meat and poultry "ordinarily" pose no threat of salmonellosis, because American consumers are aware of the problem and familiar with the precautions necessary to prevent its occurrence. That, however, is a debatable proposition, and appellants, with substantial backing, seriously dispute it. The record contains facts supporting appellants' assertion that people are not generally aware of the danger of salmonellae, much less of the safeguards required to avoid salmonellosis. Moreover, a study conducted for the Department of Agriculture and the Food and Drug Administration states that "the vast majority of the public and personnel of various food-associated industries barely know that salmonellae exist. Many of them

have suffered from salmonellosis, but they do not know why or how to avoid future incidents."[3] Nor is it any clearer that salmonellae in food do not ordinarily render it injurious to health. Meat, particularly pork, and poultry are likely to contain salmonellae when they reach the kitchens of our homes and restaurants,[4] and each year more than two million people in this country contract salmonellosis.[5]

I am also unable to accept the court's premise that labeling nonadulterated meat "Inspected and passed" is never false and misleading. An article is "misbranded" if its label is "false or misleading in any particular,"[6] and the Secretary is authorized to require informative legends to prevent false and misleading labeling.[7] In Armour & Company v. Freeman,[8] the leading case in this jurisdiction on mislabeling, we held that the question whether a label is false or deceptive is to be determined by the ordinary meaning of the words used.[9] More recently, in Federation of Homemakers v. Butz,[10] we concluded that a label was misleading because of the meaning its words imparted to the ordinary consumer.[11] As appellees concede, "the proper measure of whether [the labels] are misleading is the ordinary understanding of the consumer,"[12] and that is a matter

1. Fed.R.Civ.P. 56(c). Appellees had the burden of demonstrating the absence of any issue as to all material facts, and appellants were entitled to the benefit of any favorable inferences that could be drawn from the evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Bloomgarden v. Coyer, 156 U.S.App. D.C. 109, 114–115, 479 F.2d 201, 206–207 (1973); Leonard v. BHJK Corp., 152 U.S.App. D.C. 97, 99, 469 F.2d 108, 110 (1972); Underwater Storage, Inc. v. United States Rubber Co., 125 U.S.App.D.C. 297, 300, 371 F.2d 950, 953 (1966), cert. denied, 386 U.S. 911, 87 S.Ct. 859, 17 L.Ed.2d 784 (1967).

2. 21 U.S.C. §§ 453(g)(1), 601(m)(1) (1970).

3. United States Department of Agriculture & Food and Drug Administration, An Evaluation of the Salmonella Problem 16 (1969). See note 14, infra.

4. Id. at 2.

5. Id. at 6.

6. 21 U.S.C. §§ 453(h)(1), 601(n)(1) (1970).

7. 21 U.S.C. §§ 453(h)(12), 601(n)(12) (1970).

8. 113 U.S.App.D.C. 37, 304 F.2d 404, cert. denied, 370 U.S. 920, 82 S.Ct. 1559, 8 L.Ed.2d 500 (1962).

9. Id. at 43, 304 F.2d at 410 (Prettyman, J., concurring).

10. 151 U.S.App.D.C. 291, 466 F.2d 462 (1972), aff'g 328 F.Supp. 181 (D.D.C.1971). In its discussion of Federation of Homemakers v. Butz, the Court seems to misconstrue appellants' argument. They are not claiming that the present labels will mislead consumers into abandoning "customary methods of preparing food." On the contrary, they assert that the present labels perpetuate the customary methods that unfortunately result in two million cases of salmonellosis each year.

11. Id. at 294–295, 466 F.2d at 465–466. The District Court in that case also based its result on the meaning of the legend's words to the ordinary consumer. 328 F.Supp. at 184.

12. Appellees' Brief at 7.

for proof by the parties, not surmise by the court.

My colleagues try to support their holding by the claim that Congress "did not intend the prescribed official legends to import a finding that meat and poultry products were free from salmonellae." That observation, I submit, is wide of the mark. Congressional intent is not helpful in determining whether the labels are misleading; the relevant inquiry is the understanding of consumers. Appellants proffer evidence tending to show that consumers in large numbers understand the challenged labels to mean that the Federal Government has inspected the labeled food products for the presence of salmonellae.[13] That indication is false, for no such inspections are ever made, and labeled products are "passed" even if they contain salmonellae. I am mindful of appellees' argument that pamphlets published by the Department of Agriculture prevent such "consumer overreliance." Consumer reaction to the pamphlets, like consumer reaction to the official legends, is a material fact that remains at issue in this case.

The court also rejects appellants' contention that the Secretary has abused his discretion by substituting a consumer education program for the requested cautionary labels. Although the legislation in suit nowhere mentions educational programs as measures authorized for avoidance of false or misleading labeling, it may be assumed for present purposes that the Secretary has discretion to try to cure misbranding by such a program. But this assumption does not lead to affirmance of the summary judgment appealed from. The Secretary certainly does not have discretion to substitute a totally ineffectual program for the statutorily-required warning labels on the products. If the court's point is ever to be made, there must be suitable judicial inquiry into the impact, past and potential, of the nationwide effort it mentions.[14] I do not propose a substitution of our judgment for the Secretary's; I merely suggest that there is another material fact in issue that precluded summary judgment.[15]

For these reasons, I would hold that summary judgment was improper. I would reverse that judgment and remand the case for a trial to settle the material factual issues that are yet to be suitably resolved.

Before BAZELON, Chief Judge, and WRIGHT, McGOWAN, TAMM, LEVENTHAL, ROBINSON, MacKINNON, ROBB and WILKEY, Circuit Judges.

## ORDER

PER CURIAM.

It appearing that appellants' suggestion for rehearing *en banc* having been transmitted to the full Court and there not being a majority of the Judges in regular active service in favor of having this case reheard *en banc,* it is

Ordered by the Court *en banc* that the aforesaid suggestion for rehearing *en banc* is denied.

Statement of Circuit Judge LEVENTHAL as to why he voted to deny rehearing *en banc.*

What most troubles me about this case is the issue whether Congress may have

---

13. In a governmental survey, 39% of those questioned responded that they thought federal or state inspectors examined meat and poultry for the presence of salmonellae. Comptroller General of the United States, Salmonella in Raw Meat and Poultry: An Assessment of the Problem 26 (1974).

14. A governmental study found that only 26% of the people questioned knew what salmonella was; only 34% knew how to minimize the spread of salmonellae bacteria in meat and poultry. *Id.* at 26. Indeed, if the record supports any conclusion in this regard, it is that any educational efforts to date have been a dismal failure. See note 13, *supra,* and text *supra* at note 3.

15. I also note the District Court's thesis that it would be "virtually impossible" to place a label on meat and poultry that would adequately inform consumers about the prevention of salmonellosis. This question was not argued in the District Court, and appellants had proposed labels prior to litigation that they thought sufficient. Beyond that, the observation assumes a material fact still in issue.

intended the Secretary to act on the label problem in cases like this, where all consumers now see is the affirmative label of "Inspected and passed" and there are health problems that are not generally known. Judge Robb's opinion says (167 U.S.App.D.C. at p. ——, 511 F.2d at p. 335) that the Secretary was not unreasonable in concluding that "warning labels were not the answer to the problem and that the solution was a consumer education program which the Department proposed to undertake." It seems reasonable to suppose, as Judge Robinson was willing to assume for purposes of his dissent (167 U.S.App.D.C. at p. ——, 511 F.2d at p. 337), that the Secretary's discretion does embrace the possibility of using education to warn about particular problems. If so, his choice of education rather than labeling would likewise be a matter within his discretion, at least in the first instance. *Compare* Philadelphia TV Broadcasting Co. v. FCC, 123 U.S. App.D.C. 298, 300, 359 F.2d 282, 284 (1966). Whether the Secretary's decision to rely solely on education programs amounts to an abuse of discretion depends on whether the consumer education program is a reasonable and realistic one. This is particularly important since public education is not mentioned in the statute, and must be implied, whereas informative legending is expressly directed by the statute. On an issue like the effectiveness of education programs, it is consistent with the public interest, in my view, to provide an opportunity to demonstrate the matter in the light of experience, rather than to proceed solely by way of testimony of forecasts. *See* American Airlines, Inc. v. CAB, 123 U.S. App.D.C. 310, 319, 359 F.2d 624, 633 (en banc), cert. denied, 385 U.S. 843, 87 S.Ct. 73, 17 L.Ed.2d 75 (1966).

At least as of now the Secretary is not ignoring the salmonella problem. The matter has also been the subject of an investigation by the General Accounting Office, which made its report on July 22, 1974. I do not read the Court's decision to preclude a new challenge if it develops that consumer education programs prove inadequate to provide realistic protection, and the Secretary resists any further measures.

Chief Judge BAZELON and Circuit Judges J. SKELLY WRIGHT and SPOTTSWOOD W. ROBINSON, III, vote to grant rehearing *en banc.*