**TEXAS FOOD INDUSTRY ASSOCIATION, et al.**

v.

**Mike ESPY, et al.**

**Civ. No. A–94–CA–748 JN.**

United States District Court, W.D. Texas, Austin Division.

Dec. 13, 1994.

David L. Orr, Johnson & Gibbs, Austin, TX, Gary Jay Kushner, William A. Bradford, Jr., Mark D. Dopp, Pierre M. Donahue, Hogan & Hartson, Washington, DC, for plaintiffs.

Sylvia T. Kaser, Dept. of Justice, Civ. Div., FPB, Washington, DC, for defendants.

## ORDER

NOWLIN, District Judge.

Before the Court is Plaintiffs' Motion for Preliminary Injunction, filed November 3,

1994. Defendants' filed their Opposition to Plaintiffs' Motion for Preliminary Injunction on November 16, 1994 and Plaintiffs filed their Reply Brief in Support of their Motion for Preliminary Injunction on November 23, 1994. Additionally, several trade associations have submitted an *Amici Curiae* brief in support of Plaintiffs' Motion for Preliminary Injunction and several consumer groups have submitted an *Amici Curiae* brief in opposition. After reviewing the arguments of counsel, the applicable law, and the entire record in this case, the Court is of the opinion that Plaintiffs' Motion for Preliminary Injunction should be DENIED.

## I. BACKGROUND

On October 17, 1994, the United States Department of Agriculture ("USDA") announced a new *Escherichia Coli 0157:H7* ("*E. Coli*") sampling program, to be conducted by the Food Safety and Inspection Service ("FSIS"). The notice announced that the FSIS would collect and test five thousand (5,000) samples of raw ground beef from federally-inspected establishments and retail stores. Any of these samples testing positive for the pathogen *E. Coli* would be treated as "adulterated" under the Federal Meat Inspection Act ("FMIA") and referred to FSIS headquarters for regulatory action.[1] Prior to this announcement, the USDA had treated pathogen-contaminated[2] meat as unadulterated under the FMIA.

On November 1, 1994, several supermarket and meat-industry organizations[3] brought this action seeking to prevent the USDA from conducting its *E. Coli* sampling pro-

gram. Plaintiffs argue that the USDA failed to adhere to the notice-and-comment procedure required by the Administrative Procedure Act ("APA") and move this Court for a temporary and permanent injunction. Plaintiffs also contend that the sampling program is an arbitrary and capricious exercise of agency authority and that it exceeds the USDA's statutory authority under the FMIA.

## II. FINDINGS OF FACTS AND CONCLUSIONS OF LAW

In order to obtain a preliminary injunction, the Fifth Circuit requires the movant for a preliminary injunction to prove the following four elements:

(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury to the movant outweighs any damage the injunction might cause to the opponent; and (4) that the injunction will not disserve the public interest.

*Lakedreams v. Taylor,* 932 F.2d 1103, 1107 (5th Cir.1991); *see also Enterprise International, Inc. v. Corporacion Estatal Petrolera Ecuatoriana,* 762 F.2d 464, 471 (5th Cir. 1985). If the movant fails to sufficiently prove any of these elements, the preliminary injunction should be denied.

In evaluating the first element, whether there is a substantial likelihood of success on the merits, the nature of the Plaintiffs complaint must first be determined. Plaintiffs

---

**1.** Under the FMIA, the USDA is authorized to inspect meat and meat products to assure consumer that they are "wholesome, not *adulterated,* and properly marked, labeled, and packaged." 21 U.S.C. §§ 602–05 (emphasis added). A product is "adulterated" under the statute if "it bears or contains any poisonous or deleterious substance which may render it injurious to health; but in case the substance is not an added substance, such article shall not be considered adulterated under this clause if the quantity of such substance in or on such article does not ordinarily render it injurious to health...." *Id.* at § 601(m)(1). When a meat food product is found to be adulterated, it shall be marked as "inspected and condemned" and "shall be destroyed for human food purposes." *Id.* at § 606. The statute prohibits the sale, transportation, of-

fer for sale of transportation, or receipt for transportation of any adulterated meat food product. *Id.* at § 610. Violations of this restriction could result in criminal prosecution. Additionally, adulterated products are liable to be seized and condemned in a judicial proceeding. *Id.* at 673.

**2.** Pathogens are food-borne bacteria such as *E. Coli* and *Salmonella.*

**3.** The Plaintiff's include the Texas Food industry Association, Texas Independent Meat Packers Association, Texas Retail Association Food Council, American Meat Institute, Food Marketing Institute, National–American Wholesale Grocers' Association/International Foodservice Distributors Association, and the National Grocers Association.

do not contest that the USDA has statutory authority to conduct sampling and testing; however, Plaintiffs do attack the USDA's *E. Coli* sampling program because it treats *E. Coli* as an adulterant under the FMIA. Plaintiffs claim that the USDA's decision to treat *E. Coli* as an adulterant should be enjoined because it 1) violates the APA 2) is arbitrary and capricious and 3) exceeds USDA's statutory authority. The Court will address each of these arguments in turn.

### A. *Violation of the APA*

Under the APA, government agencies may issue rules only after the notice-and-comment procedures enumerated in the statute are completed. 5 U.S.C. § 553. It is undisputed that the USDA's sampling program was promulgated without engaging in those procedures. However, USDA argues that notice-and-comment requirements do not apply in this case by virtue of § 553(b)(3)(A) which carves out an exception for "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(3)(A). According to USDA, its *E. Coli* sampling program is nothing more than an inspection program which qualifies as a "procedural rule" under § 553(b)(3)(A). In the alternative, USDA argues that its decision to consider *E. Coli* an adulterant under the FMIA is an interpretive rule intended to advise the meat and grocery industries of the agency's position on the law.[4]

In determining whether an agency's action requires notice-and-comment, courts have recognized that there are no bright-line rules used to determine whether an agency's action fits into one of the enumerated exceptions. *E.g. Avoyelles Sportsmen's League,* *Inc. v. Marsh,* 715 F.2d 897, 909 (5th Cir. 1983) (stating that the "categories have 'fuzzy perimeters' and establish 'no general formula'") (citations omitted). Rather, "it has fallen to the courts to discern the line through the painstaking exercise of hopefully, sound judgment." *Community Nutrition Institute v. Young,* 818 F.2d 943, 946 (D.C.Cir.1987).

In the present case, the process is further complicated because the agency action in question, is actually comprised of two distinct parts. The first component is the agency's decision to test raw ground beef for the *E. Coli* pathogen and the second is its decision to treat *E. Coli* contaminated meat as "adulterated" under the FMIA.[5]

As for the first part, it appears to be undisputed that USDA has the authority to test for *E. Coli* without engaging in notice-and-comment rulemaking.[6] The FMIA authorizes the USDA to conduct testing and this aspect USDA's announcement appears to be a "procedural rule" in that it merely informs the industry of the procedures it will use to conduct this testing. Furthermore, in determining whether a rule is in fact procedural, the real inquiry has been described as whether a rule will have a "substantial impact" on those regulated. *Brown Express, Inc. v. United States,* 607 F.2d 695, 702 (5th Cir.1979). Since the testing program is conducted and funded by FSIS, it does not compel any specific industry action. In fact, there is nothing about the agency's decision to test for *E. Coli,* by itself, that imposes any kind of burden on the industry. Therefore, USDA was not required to conduct notice-and-comment procedures before implementing its plan to test raw ground beef for *E. Coli.* See *U.S. Dept. of Labor v. Kast Metals Corp.,* 744 F.2d 1145, 1151–52 (5th cir. 1984)

---

4. In categorizing the agency's action, it is important to remember that "[t]he court ... must determine the category into which the rule falls. '[T]he label that the particular agency puts upon its given exercise of administrative power is not ... conclusive; rather it is what the agency does in fact.'" *Brown Express, Inc. v. United States,* 607 F.2d 695, 702 (5th Cir.1979).

5. For ease of discussion, the Court will address each of these parts separately. Although these actions are part of the same "rule," they are theoretically distinct and could have been promulgated independently. Therefore, if each dis-

tinct part does not require notice-and-comment, there is nothing to suggest that notice-and-comment would be required merely because they were promulgated simultaneously.

6. The Plaintiffs in this case do not challenge the USDA's decision to conduct sampling and testing for *E. Coli.* Indeed, the evidence indicates that such testing has been occurring for several years. Rather, Plaintiffs challenge the USDA's testing in conjunction with its treatment of *E. Coli* as an adulterant.

(holding that an inspection plan properly fit the "procedural rule" exception to the notice-and-comment requirement of the APA).

■ The more difficult question is whether the second part of USDA's announcement, its decision to treat *E. Coli* as an adulterant, violated the APA's notice-and-comment requirement. The Court agrees with the Plaintiffs that this decision may have a substantial impact on the regulated industry. Therefore, it does not qualify as a "procedural rule." Furthermore, the USDA's announcement does not appear be a "general statement of policy." *See, e.g., Brown,* 607 F.2d at 701 (describing general statements of policy as "announcements to the public of the policy which the agency hopes to implement in future rulemakings or adjudications. A general statement of policy like a press release, presages an upcoming rulemaking or announces the course which the agency intends to follow in future adjudications") (citing *Pacific Gas & Electric Co. v. FPC,* 506 F.2d 33, 38 (D.C.Cir.1974); *Batterton v. Marshall,* 648 F.2d 694, 706 (D.C.Cir.1980) (stating that an agency action was not a general policy statement because it left "no room for further exercise of administrative discretion"). Therefore, unless the Court finds that USDA's decision to consider *E. Coli* an adulterant is an "interpretive rule," the agency violated the notice-and-comment requirements of the APA.

In describing the distinction between "interpretive rules" and rules requiring notice-and-comment ("substantive rules"), courts have stated that " 'substantive rules . . . are those which create law, usually implementary to an existing law; whereas interpretative rules are statements as to what the administrative officer thinks the statute or regulation means.' " *Brown,* 607 F.2d at 700 (quoting *Gibson Wine Co. v. Snyder,* 194 F.2d 329, 331 (D.C.Cir.1952)). The District of Columbia Circuit presented the best reconciliation of the case law on this issue when it stated:

Accordingly, insofar as our cases can be reconciled at all, we think it almost exclusively on the bases of whether the purported interpretive rule has "legal effect", which in turn is best ascertained by asking (1) whether in the absence of the rule there would not be an adequate legislative basis for enforcement action or other agency action to confer benefits or ensure the performance of duties, (2) whether the agency has published the rule in the Code of Federal Regulations, (3) whether the agency has explicitly invoked its general legislative authority, or (4) whether the rule effectively amends a prior legislative rule. If the answer to any of these questions is affirmative, we have a [substantive], not an interpretive rule.

*American Mining Congress v. Mine Safety & Health Administration,* 995 F.2d 1106, 1112 (D.C.Cir.1993).

In the present case, the Court concludes that the USDA's decision to consider *E. Coli* as an adulterant is an interpretive rule. The FMIA does not require the USDA to engage in substantive rulemaking as a predicate to considering a particular substance an adulterant. *Young v. Community Nutrition Institute,* 476 U.S. 974, 981–83, 106 S.Ct. 2360, 2364–66, 90 L.Ed.2d 959 (1986). Therefore, the "agency has the discretion to proceed through case-by-case adjudication and interpretive orders, rather than through the rulemaking process." *Marsh,* 715 F.2d at 909. Furthermore, the USDA has neither published the rule in the Code of Federal Regulations, nor invoked its general legislative authority. Finally, although the rule does constitute a change in USDA's interpretation of the FMIA, it does not effectively amend a prior legislative rule.[7]

Based on the foregoing, the Court holds that the USDA did not violate the APA. Under the factors enumerated in *American Mining Congress,* USDA's decision to consider *E. Coli* an adulterant is an "interpretive rule." Furthermore, its decision to conduct sampling and testing constitutes a "procedural rule." Therefore, the Court concludes that, as a whole, the USDA's *E. Coli* sam-

---

7. The Plaintiffs in this action claim that the new rule implicitly amends the Safe Handling regulations recently promulgated by the USDA. However, those regulations simply require the indus-try to attach warning labels. Nothing in those regulations speaks to whether a pathogen contaminated product may be shipped or sold under the FMIA.

pling program is exempted from the notice-and-comment requirement of the APA.

## B. *Arbitrary and Capricious*

 In order to find that an agency action is arbitrary and capricious, the Court must find that there is *no rational basis* for the agency action. *E.g. American Petroleum Institute v. E.P.A.,* 858 F.2d 261, 264 (5th Cir.1988) (emphasis added). The agency's decision is entitled to a presumption of regularity and a Court is not empowered to substitute its judgment for that of the agency. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415–16, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971). However, the presumption "is not to shield [the agency's] action from a thorough, probing, in-depth review." *Id.*

 Plaintiffs in this case claim that USDA's action is arbitrary and capricious because it will not achieve its intended purpose. Among other reasons, they allege that testing is prohibitively expensive and that the industry is already doing all it can to control the problem. They also argue that USDA has singled out a particular product (raw ground beef) and a particular pathogen (*E. Coli*) with no adequate explanation. They allege that other pathogens currently pose greater health risks. Finally, Plaintiffs contends that USDA's action is arbitrary and capricious because it abandons long-standing USDA policy without adequate explanation.

In response, Defendants argue that their program has already begun to achieve its intended purpose of spurring industry to use preventive measures. They also present evidence of emerging scientific and public health data which they claim justifies their focus on *E. Coli* in raw ground beef. Finally, they argue that their change in policy is due to the emerging nature of the evidence in this area.

After reviewing the evidence and arguments presented by the Parties, the Court finds that the Defendants *E. Coli* sampling program was not arbitrary and capricious. There is certainly a rational basis for the USDA to conduct some sort of testing in order to educate itself about this problem.

Furthermore, the evidence indicates that the program has been at least partially successful in spurring industry to take greater preventive measures. Moreover, in light of the common cooking practices of most Americans, there is at least a rational basis for treating *E. Coli* differently than other pathogens. Finally, the Court finds that the Defendants' changing policy is a rational response to an emerging problem.

## C. *Statutory Authority Under the FMIA*

 The Plaintiffs final claim is that USDA's sampling program exceeds its statutory authority. The " 'interpretation given [a] statute by the officers or agency charged with its administration' is entitled to substantial deference." *Marsh,* 715 F.2d at 919 (citations omitted). "Regardless of whether the court would have arrived at the same interpretation, if the agency's interpretation is reasonable the court must respect it." *Id.*

Here, the Plaintiffs do not dispute the Defendants' general authority to test raw ground beef for *E. Coli,* rather Plaintiffs contest the Defendants' decision to consider *E. Coli* as an "adulterant" under the FMIA. Plaintiffs' primary argument in this regard is that *E. Coli* contaminated ground beef is not adulterated because it is only injurious to health if improperly cooked. However, after reviewing the evidence submitted by the Parties, the Court disagrees.

Under the FMIA, a product is "adulterated" if "it bears or contains any poisonous or deleterious substance *which may render it injurious to health;* but in case the substance is not an added substance, such article shall not be considered adulterated under this clause if the quantity of such substance in or on such article does not ordinarily render it injurious to health. . . ." 21 U.S.C. § 601(m)(1) (emphasis added). In construing this language, Courts have held that other pathogens, such as *Salmonella,* are not adulterants. *See, e.g., American Public Health Assoc. v. Butz,* 511 F.2d 331, 334 (5th Cir. 1975). In reaching this conclusion, the court in *Butz* relied upon the fact that ordinary methods of cooking and preparing food kills the *Salmonella* pathogen. *See Id.* (stating that "American housewives and cooks nor-

mally are not ignorant or stupid and their methods of preparing and cooking of food do not ordinarily result in salmonellosis"). However, unlike other pathogens, it is not "proper" cooking but "thorough" cooking that is necessary to protect consumers from *E. Coli.* The evidence submitted by Defendants indicates that many Americans consider ground beef to be properly cooked rare, medium rare, or medium. The evidence also indicated that *E. Coli* contaminated ground beef cooked in such a manner may cause serious physical problems, including death. Therefore, *E. Coli* is a substance that renders "injurious to health" what many Americans believe to be properly cooked ground beef. Based on this evidence, the Court finds that *E. Coli* fits the definition of an adulterant under the FMIA.

## III. CONCLUSION

Pursuant to the foregoing analysis, the Court finds that Plaintiffs do not have a substantial likelihood of success on merits. Therefore, the Court is of the opinion that Plaintiffs' motion should be denied.[8]

ACCORDINGLY IT IS ORDERED that Plaintiffs' Motion for Preliminary Injunction is hereby DENIED.

---

**8.** Since the merits issue is determinative in this case, the Court declines to address whether Plaintiffs have satisfied the other three requirements for a preliminary injunction.